723 N.E.2d 476 (2000)
In re the VISITATION OF A.R., a Minor Child.
Tamara J. Sexton, Appellant-Petitioner,
v.
Carey Glen Rowe and Tina Marie Rowe, Appellees-Respondents.
No. 71A05-9910-CV-511.
Court of Appeals of Indiana.
February 11, 2000.
*477 Donn H. Wray, Kathleen M. Burch, Attorneys for Appellant.
Michael P. Scopelitis, South Bend, Indiana, Attorney for Appellees.

OPINION
RATLIFF, Senior Judge

STATEMENT OF THE CASE
Petitioner-Appellant Tamara J. Sexton appeals the trial court's judgment in favor *478 of Respondents-Appellees Carey Glen Rowe and Tina Marie Rowe (collectively, "the Rowes").
We affirm in part and reverse in part.

ISSUES
Sexton raises three issues for our review, which we consolidate and restate as:
I. Whether Ind.Code § 31-19-16-2 provides the exclusive means of asserting visitation rights by a biological parent who has consented to adoption.
II. Whether the trial court erred in granting the Rowes' request for attorney fees pursuant to Ind.Code § 34-52-1-1.

FACTS AND PROCEDURAL HISTORY
Tamara and Carey were married in 1988, and their marriage was dissolved in 1996. Upon the dissolution of the marriage, Tamara was granted custody of A.R., the child of the marriage born in 1990. In January of 1998, however, A.R. went to live with Carey and his new wife, Tina. Carey was granted custody of A.R. on April 6, 1998. Tamara was given visitation rights by stipulation.
On April 13, Tamara's consent to the adoption of A.R. and Tina's petition for adoption were filed with the St. Joseph Probate Court. An adoption hearing was subsequently held, and the adoption petition was granted on June 12, 1998.
During the period from April through December of 1998, Tamara visited with A.R. at least one time per month. However, beginning in January of 1999, the Rowes refused to allow Tamara to have contact with A.R.
On April 29, 1999, Tamara filed a petition to establish visitation rights with A.R. In the hearing on the petition, the parties presented argument on the applicable statutes but did not present evidence. Tamara argued that based on the fact that her parental rights were terminated by way of the adoption proceeding, she should be allowed to petition for visitation as a non-parent third party. The Rowes argued that the grant of post-adoption visitation privilege is governed by Ind.Code § 31-19-16-1 and Ind.Code § 31-19-16-2 and that Tamara failed to comply with the procedural requirements of the latter statute. The trial court subsequently denied Tamara's petition and awarded attorney fees to the Rowes. Tamara now appeals.

DISCUSSION AND DECISION

STANDARD OF REVIEW
In this case, the propriety of the trial court's judgment turns on the interpretation of various statutes. The interpretation of statutes by a trial court is a question of law, and we will conduct a de novo review. Indiana State Department of Natural Resources v. Hensley, 716 N.E.2d 71, 76 (Ind.Ct.App.1999); Morgan County v. Ferguson, 712 N.E.2d 1038, 1043 (Ind.Ct.App. 1999).

I. APPLICATION OF THE STATUTES
The crux of the issue before us is whether Ind.Code § 31-19-16-2 provides the exclusive means for a birth parent to obtain post-adoption visitation privileges. Ind.Code § 31-19-16-1 provides that "[a]t the time an adoption decree is entered, the court entering the adoption decree may grant [post-adoption] contact privileges under section 2 of this chapter to a birth parent who has . . . consented to the adoption." Ind.Code § 31-19-16-2 provides that a trial court may grant post-adoption privileges if (1) the grant of post-adoption contact privileges is in the best interests of the child; (2) the child is at least two years of age and there is a significant emotional attachment between the child and the birth parent; (3) each adoptive parent consents to the granting of the post-adoption privileges; (4) the adoptive parents and the birth parents execute a post-adoption contact agreement and file the agreement with the trial court; (5) any licensed child-placing *479 agency sponsoring the adoption or other such entity, coupled with any special advocate or guardian ad litem appointed under Ind.Code § 31-32-3-1 et seq., recommends the post-adoption contact agreement; (6) the adopted child, if over twelve years of age, gives consent to the post-adoption contact; and (7) the post-adoption contact agreement is approved by the court. In the present case, there is no dispute that the procedural requirements of Ind.Code § 31-19-16-2 have not been met.
The statutes at issue do not state explicitly that the procedures outlined therein are exclusive. To the extent that the statutes are rendered unclear or ambiguous by the absence of a clear statement of exclusivity, we will construe the provisions found therein. See Smith v. Medical Licensing Bd. of Indiana, 459 N.E.2d 401, 404 (Ind.Ct.App.1984). Determining legislative intent is foremost in construing any statutes, and wherever possible, this court will give deference to that intent. Lowell Health Care Center v. Jordan, 641 N.E.2d 675, 677-78 (Ind.Ct.App. 1994), trans. denied. We view a statute within the context of the entire act, not in isolation. Id. at 678. We are required to adopt the construction which sustains the Act, carries out its purposes, and renders all parts thereof harmonious. Id.
The right of adoption in Indiana was unknown to the common law; however, as early as 1855, the legislature provided for the statutory right. See In re Perry, 83 Ind.App. 456, 148 N.E. 163, 166 (Ind.Ct.App.1925). For at least the last half-century, the adoption statutes have provided that a birth parent giving up his or her child for adoption, and not married to the adoptive parent, shall be divested of all rights with respect to the adoptee. See e.g., Acts 1941, c. 146, § 8. In 1994, however, an exception to the general rule of total divestiture was created by the legislature. See P.L. 79-1994, Sec. 5. This exception allowed for the possibility of post-adoption visitation privileges by a birth parent if the birth parent complied with the statute's strict procedural requirements.
In 1997, the general rule of total divestiture, codified as Ind.Code § 31-3-1-9, and the exception thereto, codified as Ind.Code § 31-3-1-13, were repealed and recodified without substantive change as Ind.Code § 31-19-16-1 and Ind.Code § 31-19-16-2. See P.L. 1-1997. In the same public law, the legislature also repealed and recodified the statutes pertaining to visitation by grandparents. In so doing, the legislature created a new statute, Ind.Code § 31-17-5-9, which governed the visitation rights of grandparents when the child is adopted by stepparents, siblings, aunts, uncles, nieces, and nephews.
The aforementioned history outlines the creation of a very specific and significant exception to the general rule of total divestiture of a birth parent's rights, while at the same time demonstrating that the post-adoption rights of birth parents differ significantly from those of other parties. It is this history which convinces us that the legislature intends Ind.Code § 31-19-16-2 to provide the exclusive means by which a birth parent may acquire post-adoption visitation rights. Furthermore, we do not believe that the legislature intended that a birth parent's failure to comply with Ind.Code § 31-19-16-2, resulting in the forfeiture of his or her newly-created right to post-adoption contact, should subsequently act as a means for that birth parent, under the guise of a non-parent third party, to circumvent the statute's requirements.
We hold as a matter of law that Tamara, having failed to comply with the procedure set forth in Ind.Code 31-19-16-2, cannot now remedy that failure by seeking visitation as a non-parent third party. Accordingly, the trial court did not err in denying Tamara's petition or in denying her an evidentiary hearing on the issue of whether she met the factual prerequisites for visitation as a non-parent third party.

*480 II. ATTORNEY FEES

Tamara contends that the trial court erred in awarding attorney fees pursuant to Ind.Code § 34-52-1-1(b)(1), which authorizes the award of attorney fees if the court finds that a party brought an action that is "frivolous, unreasonable, or groundless." The trial court's decision is reviewed under an abuse of discretion standard. Garza v. Lorch, 705 N.E.2d 468, 473 (Ind.Ct.App.1998). However, we must view charges of "frivolous, unreasonable, or groundless" claims with suspicion. Mitchell v. Mitchell, 695 N.E.2d 920, 925 (Ind.1998). This is especially true where the case is one of first impression, even if "rudimentary legal reasoning" would have led a person to believe the Indiana courts probably would rule against the person raising the claim. Watson v. Thibodeau, 559 N.E.2d 1205, 1211 (Ind.Ct.App.1990).
In the present case, the issue regarding the exclusivity of Ind.Code § 31-19-16-1 and Ind.Code § 31-19-16-2 is one of first impression. We have determined that Tamara erred in questioning the statutes' exclusivity; however we do not believe that her claim was "frivolous, unreasonable, or groundless." Accordingly, we hold that the trial court erred in awarding attorney fees to the Rowes.

CONCLUSION
The trial court was correct in denying Tamara's petition for post-adoption visitation.[1] The trial court erred, however, in awarding attorney fees pursuant to Ind. Code § 34-52-1-1(b)(1).
We affirm in part and reverse in part. We remand with instructions that the trial court vacate its attorney fee award.
ROBB, J., and BAILEY, J., concur.
NOTES
[1] We note that in her reply brief, Tamara questions whether her consent to the adoption was voluntary. The issue of voluntariness is pertinent to the question of whether the adoption should be set aside. No motion to set aside the adoption has been filed, and we will consider neither the legal issue nor the factual issues pertinent thereto.