798 N.E.2d 867 (2003)
In the Matter of The ADOPTION OF T.J.F.
Michael D. Hinrichs and Julie C. Hinrichs, Appellants-Petitioners,
v.
The Office Of Family And Children Of Allen County, A Division of The Allen County Department of Public Welfare, Appellee-Respondent.
No. 02A05-0212-CV-616.
Court of Appeals of Indiana.
November 13, 2003.
*868 Thomas C. Allen, Fort Wayne, In, Attorney for Appellant.
Dustin M. Roach, Suzan M. Rutz, Burt, Blee, Dixon, and Sutton, Fort Wayne, In, Attorneys for Appellee.

OPINION
RILEY, Judge.

STATEMENT OF THE CASE
Appellants-Petitioners, Michael D. Hinrichs and Julie C. Hinrichs (collectively, "the Hinrichs"), appeal the trial court's order approving the Guardian Ad Litem (GAL) and the Office of Family and Children of Allen County, a Division of the Allen County Department of Public Welfare's (OFC) Motion to Permit Biological Sibling Visitation.
We reverse and remand.

ISSUES
The Hinrichs raise two issues on appeal, which we restate as follows:
(1) Whether the trial court erred in denying the Hinrichs' Motion to Dismiss the GAL and OFC's Motion to Permit Biological Sibling Visitation; and
(2) Whether the trial court erred in not terminating the post-adoption visitation order between T.H. and her biological sister, L.W.

FACTS AND PROCEDURAL HISTORY
On April 1, 1997, the Hinrichs filed a Petition for Adoption of T.F.[1] On June 27, 1997, the trial court ordered visitation to be established between T.F. and her biological sister, L.W. However, the visitations did not take place. T.F. was two years old at the time of the trial court's order and L.W. was "struggling." (Brief p. 6). Catholic Charities, had wardship over L.W., and they did not follow through with the trial court's order for visitation between T.F. and her sister L.W.
On September 2, 1997, a Post-Adoption Visitation Agreement was filed in the same cause prior to the entry of the Decree of Adoption. The Post-Adoption Visitation Agreement allowed for visitation between T.F. and her biological sister, L.W. Additionally, the Post-Adoption Visitation Agreement placed the responsibility on the Hinrichs to schedule the visitations.
On December 19, 1997, the trial court entered a Decree of Adoption between the Hinrichs and T.F., now T.H. The Decree of Adoption does not mention the relationship between T.H. and L.W., who was not adopted by the Hinrichs. Additionally, the Decree of Adoption does not include an Order approving the post-adoption visitation agreement.
On August 12, 1998, an Amended Post-Adoption Visitation Agreement was filed in the same captioned cause. The Chronological Case Summary (CCS) does not reflect that the trial court entered an order *869 approving the Amended Post-Adoption Visitation Agreement.
In 2001, Catholic Charities contacted the Hinrichs to begin visitation between T.H. and L.W.; however, the Hinrichs declined their request. On April 18, 2002, the OFC, and the Guardian Ad Litem filed a Motion to Permit Biological Sibling Visitation. On May 2, 2002, the Hinrichs filed a Motion to Dismiss the Guardian ad Litem and Office of Family & Children's Motion to permit Biological Sibling Visitation. On June 18, 2002, the trial court denied the Hinrichs' motion.
Thereafter, on July 3, 2002, the Hinrichs filed a Motion to Modify and/or Terminate Sibling Visitation. On July 23, 2002, a hearing was held on the GAL and OFC's Motion to Permit Biological Sibling Visitation and the Hinrichs' Motion to Modify and/or Terminate Sibling Visitation. At the hearing, the Hinrichs made an oral motion to Dismiss the GAL and OFC's Motion to Permit Biological Visitation. After receiving and hearing evidence, the trial court denied the Hinrichs' oral motion to Dismiss the GAL and OFC's Motion to Permit Biological Sibling Visitation.
On November 25, 2002, the trial court issued the following Findings of Fact and Conclusions of Law, which state, in pertinent part:

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Trial was held in the above cause on July 23, 2002. The parents were present and represented by attorney Thomas Allen. The [GAL], Susan [Suzan] Rutz, was present. The Office of Family and Children was present by attorney Dustin Roach, who represented the interest of the child, [L.W.]. Catholic Charities was also present.
All parties rested. Proposed Findings of Fact was filed by August 30, 2002. The Court then took the matter under advisement and now enters its Findings, Conclusions, and Order of Modification.

FINDINGS OF FACT
1. [L.W.] and [T.H.], are biological sisters.
2. [T.H.] was adopted by [the Hinrichs] on December 19, 1997.
3. [T.H.] is now seven (7) years old; [L.W.] is now thirteen (13) years old.
4. Filed in the same cause prior to the granting of the Decree of Adoption was a Post[-][A]doption Visitation Agreement which allowed for visitation between [T.H.] and her biological sister, [L.W.].
5. Julie C. Hinrichs, adopted mother of [T.H.], admitted that she signed the Post[-][A]doption Visitation Agreement.
6. An Agreed Entry amending post[-]adoption visitation was filed in the same-captioned cause on or about August 11, 1998.
7. No visits pursuant to the Post[-][A]doption Visitation Agreement have taken place since 1997.
8. Julie Hinrichs admitted that paragraph 10B of the Post[-][A]doption Visitation Agreement placed the responsibility on her to arrange the visits.
9. That the original post[-]adoption visitation was not initiated at the suggestion of Catholic Charities due to behavior problems [L.W.] was having.
10. The Allen Superior Court retained jurisdiction over [L.W.] with the Allen County Office of Family and Children having wardship over said child.
11. In [L.W.'s] Child in Need of Services case, the [GAL] for [L.W.], Susan [Suzan] Rutz, continued to act in her capacity as [GAL].

*870 12. That Susan [Suzan] Rutz, as the [GAL], was unaware that visitation had not been implemented between [L.W.] and [T.H.] since the time of the adoption on December 19, 1997.
13. That the Hinrichs did not refuse or interfere with the post[-]adoption agreement visitation until a request was made in September, 2001.
14. On or about April 18, 2002, the Office of Family and Children filed a Motion to Permit Biological Sibling [Visitation] and on July 3, 2002, the Hinrichs, adoptive parents of [T.H.], filed a Motion to Modify and/or Terminate Siblings Visitation.
15. That Patricia L. Bader [Dr. Bader] is an expert in pediatrics and cytogenics and licensed to practice medicine in the State of Indiana.
16. That Dr. Bader is the doctor supervising the ongoing case of [T.H.] and that [T.H.] has been diagnosed [as] suffering from Fetal Alcohol Syndrome.
17. That the Fetal Alcohol Syndrome (hereinafter FAS) has caused her to have delays in psychological development and maturation which includes developmental delays in social interaction and academic developments.
18. That FAS children generally have difficulty sorting out realistic perceptions and social/relational situations and often misinterpret their environment. They require routine and consistency which are crucial to healthy developmental process.
19. Barbara Gelder, PHD, [Dr. Gelder] and [Dr. Bader], testified that FAS children require stability and predictability in their lives.
20. Dr. Bader's particular phraseology regarding [T.H.'s] needs was that she must avoid "disturbances[.]"
21. Dr. Gelder's particular phraseology was that a FAS child is in need of "ongoing and predictable procedures."
22. Dr. Gelder testified that FAS children do not transition well but acknowledged that it was the fact of transition, not the stimulus, that creates the possibility of detrimental consequences to an FAS child.
23. Dr. Gelder testified that FAS children respond better to "prepared transitions" as opposed to "immediate transitions[.]"
24. Dr. Gelder testified that FAS children are capable of creating new relationships.
25. Dr. Gelder and Dr. Bader acknowledged that a lack of stability could arise out of any relationship in which [T.H.] is involved.
26. Dr. Bader testified that there is no predictability as to how an FAS child will respond to a new situation and that it must be dealt with on a "case by case" basis.
27. Dr. Bader recommended that it is not in [T.H.'s] best interest to have visits with her sister, [L.W.], in that the visitations would create a serious potential for psychological damage to [T.H.].
28. Dr. Bader also testified that visits with [L.W.] would be harmful to the trusting bonds that she has formed with her current family.
29. Neither Dr. Bader nor Dr. Gelder have seen [L.W.] for diagnostic or therapeutic consultation.
30. Neither Dr. Bader nor Dr. Gelder advised [T.H.] that she had a biological sister.
31. [T.H.] is aware that she has a biological sister that exists but has not shown any interest in meeting [L.W.].
32. That the mother, Julie Hinrichs, testified that it is not in the best interest *871 of [T.H.] to have visits with her sister due to the uncertainty that the developing relationship would have on [T.H.].
33. Julie Hinrichs testified that five (5) other children live in her household, several of whom are adopted and have biological siblings with whom they do not visit.
34. Julie Hinrichs testified that [T.H.] has good relationships with her current adoptive sisters.
35. Julie Hinrichs testified that [T.H.] had a normal childhood and has been involved in school, church, and other extracurricular activities.
36. During these activities [T.H.] has met new children and formed relationships with new children.
37. [The Hinrichs] had training in the behavioral needs of FAS children and Julie Hinrichs testified that five other children live in her household and several of them suffer from FAS.
38. The mother, Julie Hinrichs, testified that if the visits failed to take place in an appropriate manner that it would harm [T.H.] psychologically and emotionally, as well as seriously hamper the trust within the Hinrichs family unit.
39. Julie Hinrichs characterized [T.H.'s] behavior as "she has meltdowns all the time[.]"
40. Julie Hinrichs testified that there is little predictability as to the events that will trigger a "meltdown" in [T.H.].
41. No evidence was introduced that [L.W.] has any behavioral propensities that may trigger "meltdowns" in [T.H.].

CONCLUSIONS OF LAW
The Post[-][A]doption Sibling Contract Agreement entered into at the time of the adoption was in substantial compliance with [Ind.Code §] 31-19-16.5-1 and is covered by Chapter 16.5 and may be vacated or modified by the Court when it is the best interest of the adopted child to do so.
This Court now concludes that it is in the best interest of the adopted child to modify the Post[-][A]doption Sibling Contract Agreement.
(Appellant's App. pp. 5-10).
The Hinrichs now appeal. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. Post-Adoption Visitation Agreement

First, the Hinrichs argue that the trial court erred by not granting their Motion to Dismiss the GAL and OFC's Motion to Permit Biological Visitation. Specifically, the Hinrichs allege that the Decree of Adoption does not contain the trial court's approval for post-adoption sibling visitation as required by Ind.Code § 31-19-16.5-1. As a result, the Hinrichs maintain that the trial court did not have the jurisdiction to subsequently order sibling visitation.
The GAL and the OFC argue that I.C. § 31-19-16.5-1 does not require the trial court to expressly approve and adopt the Post-Adoption Visitation Agreement executed by the parties into the Decree of Adoption. Nevertheless, the GAL and the OFC alternatively allege that the trial court expressly approved and adopted the Post-Adoption Visitation Agreement.

A. Standard of Review

In this case, the trial court's judgment turns on the interpretation of a statute. The interpretation of statutes by a trial court is a question of law, and we will conduct a de novo review. In re Visitation of A.R., 723 N.E.2d 476, 478 (Ind.Ct. App.2000); Indiana State Department of Natural Resources v. Hensley, 716 N.E.2d 71, 76 (Ind.Ct.App.1999).

*872 B. Application of the Statute

Indiana Code Section 31-19-16.5-1, states, in pertinent part:
At the time an adoption decree is entered, the court entering the decree may order the adoptive parents to provide specific post[-]adoption contact for an adopted child who is at least two (2) years of age with a pre-adoptive sibling if:
(1) the court determines that the post[-]adoption contact would serve the best interests of the adopted child; and
(2) each adoptive parent consents to the court's order for post[-] adoption contact privileges.
In the instant case, the record shows that on December 19, 1997, the trial court executed a Decree of Adoption. The record further shows that the Decree of Adoption did not contain provisions authorizing post-adoption sibling visitation. As stated above, I.C. § 31-19-16.5-1 clearly specifies that such post-adoption contact be provided for in the adoption decree itself. Here, the adoption decree does not mention any such post-adoption contact.
Nevertheless, the GAL and OFC argue that on June 27, 1997, the trial court expressly authorized the visitation between T.J.F. and her sister L.W. However, we find that this ruling was not final and conclusive.[2] Rather, it was made as a temporary accommodation to the then relationship of the siblings. It was an interlocutory order at best. As we previously stated in City of New Haven v. Chemical Waste Mgmt. Of Indiana, L.L.C., 701 N.E.2d 912, 924 (Ind.Ct.App.1998), trans. denied:
[T]he very nature of interlocutory orders is that the case is not fully developed before the case proceeds to a final hearing on the merits.
Such preliminary or interlocutory matters involve issues, which become merged in the final judgment. However, the issue of post-adoption sibling visitation was not merged in to the Decree of Adoption.
Further, at the final adoption hearing on December 19, 1997, the trial court was aware of the post-adoption visitation agreement; nevertheless, the trial court did not include a specific reference to the visitation between T.J.F. and L.W. in the Decree of Adoption. Specifically, at the final adoption hearing, the following colloquy occurred between the trial court and the Hinrichs' attorney:
[THE HINRICHS' ATTORNEY]: Oh. One other thing, JudgeuhI forgot. Umprior to theuhsetting this for final hearingumwe have entered into a visitation agreement withuha sibling. Iuhand thewell, it's with the Welfare Departmentuhfor visitation between [T.H.] and a sibling that is not being adopted.
THE COURT: Okay. Very well. Has that been
[THE HINRICHS' ATTORNEY]: Yes. That'sthat's
THE COURT:made a part of this record?
[THE HINRICHS' ATTORNEY]:in the file somewhere.
THE COURT: Okay.
THE COURT: The Record of Adoption needs to be correct, also.
(Appellant's App. pp. 199-200). Based upon this exchange, it is clear that the trial *873 court was aware of the post-adoption visitation agreement. However, the trial court did not include specific authorization for sibling visitation in the Decree of Adoption. Thus, the adoption decree's silence with reference to the matter of sibling visitation is no more an indication of an inadvertent omission on the part of the trial court than it is indicative that the trial court in the final analysis determined that it was not in the best interest of T.J.F. for continuing visitation with L.W.
We believe that the latter conclusion would seem to be the more likely in that such continuing visitation might well be disruptive to the integrity of the adoptive family unit. See 2 Am.Jur. 2D Adoption § 174 (1994). Although we believe that both possible conclusions involve a degree of speculation, neither such inference is entitled to conclusive effect. We are therefore left with an adoption decree that is silent upon the matter of sibling visitation and which by common rules of construction subsumes, all issues which were before the court in the adoption proceeding.
As a result, the instant case is similar to matters involved in marriage dissolution cases. In such cases, we have previously held that "provisional orders terminate when a final decree is entered. . . ." Dillon v. Dillon, 696 N.E.2d 85, 87 (Ind.Ct.App. 1998). Therefore, the June 27, 1997 temporary order was terminated when the final Adoption decree was entered. Absent a specific statement in the Decree of Adoption authorizing sibling visitation, the judicial authorization for sibling contact ended with entry of the adoption decree.[3] Accordingly, we hold that the trial court erred in ordering post-adoption visitation between T.J.F. and L.W. Consequently, we find that the trial court erred in denying the Hinrichs' Motion to Dismiss the GAL and OFC's Motion to Permit Biological Sibling Visitation.

II. Best Interest of the Child

Next, the Hinrichs contend that the trial court abused its discretion when the trial court determined that it was in T.J.F.'s best interest to visit her biological sister, L.W. In particular, the Hinrichs maintain that the trial court's Findings of Fact and Conclusions of Law were not supported by the evidence presented at trial. Alternatively, the GAL and the OFC maintain that the trial court did not abuse its discretion in entering its Findings of Fact and Conclusions of Law ordering post-adoption sibling visitation between T.H. and L.W.
We review the trial court's decision for an abuse of discretion, and will reverse only if it is against the logic and effect of the facts and circumstances before the court and any reasonable references arising therefrom. Benda v. Benda, 553 N.E.2d 159, 163 (Ind.Ct.App.1990). In determining whether the trial court abused its discretion we do not weigh conflicting evidence, but consider only that evidence which supports the trial court's decision. Smith v. Dawson, 431 N.E.2d 850, 851 (Ind.Ct.App.1982).
Further, where the trial court has made special findings pursuant to a party's request, the reviewing court may affirm the judgment on any legal theory supported by the findings. Bergman v. Knox County Office of Family and Children, 750 N.E.2d 809, 811 (Ind.Ct.App. *874 2001). However, our affirmance must be consistent with all of the trial court's findings of fact and reasonable inferences drawn therefrom. Id. The trial court's findings and judgment will be set aside only if they are clearly erroneous. Id. Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences to support them. Id.
Although we believe that deference is to be given the determination of the trial court, that deference is applicable only if the evidence supports the findings and in turn the findings support the determination. Here, our review of the record reveals that many of the purported findings are not findings of fact. Instead, the findings are a recitation of the evidence that was presented at the hearing. In particular, throughout the findings in question, the trial court noted that various witnesses "testified" or observed certain details. Our supreme court has previously held that statements of this kind are "not findings of basic fact in the spirit of the requirement." Perez v. U.S. Steel Corp., 426 N.E.2d 29, 33 (Ind.1981). A court or an administrative agency does not find something to be a fact by merely reciting that a witness testified to X, Y, or Z. See id. Rather, the trier of fact must find that what the witness testified to is the fact. Additionally, the trier of fact must adopt the testimony of the witness before the "finding" may be considered a finding of fact. See Van-Scyoc v. Mid-State Paving, 787 N.E.2d 499 (Ind.Ct.App.2003); see also Taylor v. Indiana Family & Social Services Admin., 699 N.E.2d 1186 (Ind.Ct. App.1998); see Moore v. Family & Social Services Admin., 682 N.E.2d 545 (Ind.Ct. App.1997).
We believe that both the Hinrichs' and the GAL and OFC have a legal right to know the evidentiary bases upon which the ultimate finding rests. See Perez, 426 N.E.2d at 32. That responsibility initially lies with the trial court, who for that reason must enter specific findings of basic fact to support its finding of ultimate fact and conclusion of law. Id. Parties will thereby be enabled to formulate intelligent and specific arguments on review. In turn, the reviewing court can expeditiously and effectively review the trial court's determination; the integrity of that decision will be maintained by judicial review, which is limited to these findings. See id.
Thus, although neither party raised the issue of specificity of the findings in this appeal, we are unable to affirm the decision of the trial court in light of the inadequate findings made.

CONCLUSION
Based on the foregoing, we conclude that the trial court erred in ordering post-adoption sibling visitation. Consequently, we find that the trial court improperly denied the Hinrichs' Motion to Dismiss the Guardian ad Litem and Office of Family and Children's Motion to Permit Biological Visitation. Accordingly, we reverse the judgment and remand with instructions to grand the Hinrichs' Motion to Dismiss the GAL and OFC's Motion to Permit Biological Sibling Visitation.
Reversed and remanded with instructions.
SULLIVAN, J., and FRIEDLANDER, J., concur.
NOTES
[1] We note that pre-adoption, T.H. was named T.F.
[2] The entry made by the trial court on June 27, 1997 made provisions for visitation between T.J.F. and L.W., however, the entry specifically stated that such provision was "Pending further order of the Court." (Appellant's App. p. 1).
[3] In A.R., 723 N.E.2d at 479, the court in considering a post-adoption petition for visitation filed by the biological mother held that the statutory provision for post-adoption contact with the child by the birth parent is "the exclusive means" by which to obtain such visitation privileges. We can discern no basis for holding otherwise with reference to post-adoption visitation by a biological sibling as opposed to a biological parent.