**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**M. BRUCE SCOTT**
Helmke Beams, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**JAN BARTEAU BERG**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JENNIFER K. STEVENSON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 11A01-1304-DR-160 |
| | ) | |
| DAVID C. STEVENSON, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE CLAY SUPERIOR COURT
The Honorable J. Blaine Akers, Judge
Cause No. 11D01-1202-DR-106

**November 21, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Jennifer K. Stevenson ("Mother") appeals a trial court order awarding primary physical and legal custody of her two minor children to their father, David C. Stevenson ("Father"). Finding that she has failed to establish that the trial court's custody determination was clearly erroneous, we affirm.

## Facts and Procedural History

Mother and Father were married in March 2003 and subsequently had two sons: E.S., born in September 2005, and N.S., born in August 2007. When the children were young, both Mother and Father worked outside the home, and the children were in daycare. During that time, Father was working at Rose Hulman Institute of Technology and often had to work late. Mother spent the evenings caring for the children.

In 2009, Mother began to exhibit mental health issues, including severe depression and bipolar disorder, with hallucinations. She lost her job and was treated by a psychiatrist, who prescribed medications to control her symptoms. She reported that she had become physically aggressive with Father and had discontinued her medications on a couple occasions. In addition to her mental health issues, Mother also suffered from Crohn's disease. She filed for marital dissolution, but dismissed the petition when she and Father reconciled. Father began caring for the children in the evenings so that Mother could attend classes at Ivy Tech. When she was not at class, Mother slept much of the time.

In the summer of 2011, Father's position at Rose Hulman was reclassified. In August 2011, he and Mother moved the family from Terre Haute to Center Point, Father's former

hometown, where he had numerous relatives and where E.S. could begin kindergarten. In February 2012, Father came home and found a note on the door, in which Mother stated that she wanted a divorce. Mother had taken the children, the van, and numerous household items and moved to Fort Wayne. That same day, she filed a petition for dissolution. She moved in with her mother and enrolled E.S. in a Fort Wayne school.

In April 2012, Mother and Father entered into a preliminary agreement concerning custody and parenting time, and the trial court approved the agreement by issuing a preliminary order. Pursuant to the agreement, Mother had primary physical custody. At that time, she was unemployed and could spend time with the children during the week. The parties agreed that Father would have parenting time every weekend and that they would meet halfway between Center Point and Fort Wayne each Friday and Sunday to make the exchanges.

A few months later, Mother moved from Fort Wayne to a rental home in Ossian and enrolled E.S. in school there. Neither Father nor the trial court was notified of the changes. Mother's income was insufficient to cover her expenses, so she unilaterally discontinued Father's parenting time to save money on gas. In September 2012, Mother filed a petition to modify the preliminary order, and Father filed an affidavit for rule to show cause why Mother should not be held in contempt for failure to abide by the parenting time designations laid out in the preliminary order. The trial court held a hearing and on October 10, 2012, issued an order holding Mother in contempt and granting temporary physical custody of the children to

Father.  On October 12, 2012, Mother filed a motion to reconsider and a motion to correct error, which the trial court denied.

On January 4, 2013, the trial court entered its final decree of dissolution, awarding primary physical and legal custody of the children to Father.  Mother now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Mother contends that the trial court erred in awarding primary physical and legal custody of E.S. and N.S. to Father.  When reviewing a custody determination, we give considerable deference to the trial court, which observes the parties' conduct and demeanor. *In re Paternity of C.S.*, 964 N.E.2d 879, 883 (Ind. Ct. App. 2012), *trans. denied*.  Where, as here, the trial court sua sponte issues special findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review in which we first determine whether the evidence supports the findings and then determine whether the findings support the judgment.  *In re Marriage of Duckworth*, 989 N.E.2d 352, 353 (Ind. Ct. App. 2013).  Findings and conclusions will be set aside only if they are clearly erroneous.  *Id.* A judgment is clearly erroneous if it leaves us with a firm conviction that a mistake has been made or if it applies the wrong legal standard to properly found facts.  *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 944 (Ind. Ct. App. 2006).  In conducting our review, we neither reweigh evidence nor judge witness credibility.  *C.S.*, 964 N.E.2d at 883.  Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Duckworth*, 989 N.E.2d at 354.

4

### I. Contempt Order

At the outset, we address Mother's claim that the trial court erred in imposing a sanction not allowed by the indirect civil contempt statute, i.e., temporary modification of custody.[1] According to Indiana Code Section 34-47-3-6(c), if a defendant fails to deny, explain, or avoid the facts set forth in the rule to show cause, the court may punish the defendant by imposing a fine, imprisonment, or both. Clearly, the statute contemplates only two types of sanctions, and Mother is correct in her assertion that the trial court erred in deviating from the statutory sanctions. Notwithstanding, the nature of the sanction imposed pursuant to the order to show cause did not figure into the trial court's final dissolution decree. Rather, the trial court was concerned with the behavior that precipitated the order to show cause in the first place. In other words, Mother's behavior in refusing to continue Father's parenting time as outlined in the preliminary order was a legitimate factor in the trial court's final determination concerning custody.

### II. Custody Order

Mother also appeals the final dissolution decree, contending that the trial court clearly erred in awarding physical and legal custody to Father. Indiana Code Section 31-17-2-8 states,

> The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:

---

[1] Father asserts that Mother waived her right to raise the issue in this appeal because she failed to file a timely appeal of the order to show cause pursuant to Indiana Appellate Rule 9. Because the order to show cause was not a final, appealable order, Father's assertion is incorrect.

5

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

    (A) the child's parent or parents;

    (B) the child's sibling; and

    (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

    (A) home;

    (B) school; and

    (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

In the dissolution decree, the trial court made the following findings concerning custody:

7. Approximately August 1, 2011, the parties, both agreed to move the boys from the Terre Haute address into a home in Clay County, Indiana (owned by father's family) so the minor child [E.S.], could commence kindergarten, because both parents desired for the boys to attend Jackson Township Elementary School. Two (2) weeks after the move from Terre Haute, the parties placed [E.S.] in the Jackson Township Elementary School kindergarten program.

8. Mother primarily took care of the minor children during father's work days. However, mother would go to night school at Ivy Tech wherein father would assume the primary caretaking role of the children. Both parents testified they were both actively involved in raising the minor children and made joint decisions with each other regarding "major decisions" affecting the children's lives, such as what school they would attend.

9. Evidence (Respondent's Exhibit 1), which the parties stipulated be sealed as confidential and not for public disclosure, was presented *(Note: For purposes of any appeallate [sic] review, Respondent's Exhibit 1 is of record.)*

6

In summary, the documents produced at trial show June 5, 2009, Mother commenced being treated at Hamilton Center on or about June 5, 2009, reporting depressed mood, sleep disturbance, irritability, agitation, increased anxiety and having auditory and visual hallucinations. Mother also reported feeling paranoid, seeing shadows of people following her and suicidal thoughts. A review of Mother's mental health records show that Mother has an extensive history of mental health therapy and that Mother remains under treatment in Fort Wayne, Indiana. Mother also suffers from Crohn's Disease.

Father argued at the final hearing that Mother's health care and mental health situation were concerns that should warrant him having custody. The Court finds the Mother was open and candid about her entire situation, including all of her health care treatment, and it appears she has taken substantial steps to treat and counsel for any issues she has had or has, which is a consideration this Court has taken into account. The Mother testified the Father trusted Mother to care for the children on a daily basis throughout the entirety of the marriage even after she was hospitalized and when she asked for divorce shortly thereafter.

Also, Mother presented concerns about Father which included his use of physical punishment with objects such as belts and yardsticks for pre-school aged children, and his obsession with pornography.

10. The Father testified on February 15, 2012, he came home from work, after having worked a full day, only to find certain items in his home missing as well as [Mother] and the two (2) children gone; a note was attached to the front door stating that Mother had filed for divorce and moved to Fort Wayne. He further testified, without any knowledge or consent by him, Mother enrolled [E.S.] in a kindergarten class in Fort Wayne, Indiana, initially, but has subsequently moved, once again, to another home and another school district in Ossian, Indiana.

Mother testified she moved to Fort Wayne before the preliminary hearing because she lived and worked there before the marriage, and her own Mother was there to help her with a temporary place to stay, and to help her care for the children, while Mother sought employment and found a decent place to live. The parties clearly had troubles in their marriage before. Mother previously filed for and pursued divorce, only to reconcile. The Mother contends she knew that continuing this situation was not good, and the marriage was simply not sustainable, and she desired to avoid a potentially ugly confrontation in front of the children she would have anticipated to occur given Father's desires for the marriage to not end. Mother did not have immediate family in this area, and she understood she would need to have money to help support her children. Mother claims her concerns about the Father were designed to help take the children from a bad situation into a

7

potentially more stable situation, and were calculated to be in their best interests, even though such a move would understandably hurt Father's feelings.

The Mother testified the Father agreed to Mother having the children the majority of the time while this case was pending. She said the Father agreed to a situation where he would see the children on weekends and this agreement was made at the same time an agreement was made to have a final hearing in July 2012. Mother [sic] mediation ordered by the Court was not completed. Mother maintains there was no evidence she intentionally frustrated or delayed the mediation process. Mother testified the frequency of parenting time exchanges were clearly designed to last until that July hearing. Also the Mother testified the children were adapting well to their living environment and the oldest child had done very well in completing kindergarten and in starting first grade.

11. During the pendency of this action, in order to reserve a contested custody action for the final hearing herein, the parties entered into a Preliminary Agreement wherein the parties agreed as follows:

> "1.    The parties will share joint legal custody of the minor children. [Mother] will have primary physical custody of the children. [Father] will have parenting time at all reasonable times agreed upon by the parties, and particularly, the parties agree to the following schedule and conditions about parenting time:
>
> > a.    [Father] will have regular parenting time every weekend from Friday at 6:30 p.m. until Sunday at 6:00 p.m. This will begin Friday April 13, 2012.
> >
> > b.    Exchanges will occur at a mutually agreeable location on Exit 1, off of Interstate 69 on the north side of Indianapolis, Indiana. [Father]'s sister … will be able to assist in transportation for [Father] if his work schedule prevents him from participating …."

12. On September 10, 2012, Father filed an Affidavit for Rule to Show Cause to hold Mother in contempt of court in that Father alleged the Mother refused to grant to Father parenting time consistent with the Preliminary Order and stated that she would only provide parenting time on "alternating" weekends. During the the [sic] Rule to Show Cause hearing, the Mother asserted:

a. the planned parenting time of every weekend and alternating weeks in the summer was unquestionably complied with by the parties until the date of the first Final Hearing in July, as well as up until when first grade started for the oldest child in August;

b. it was only after the previously anticipated date of that first Final Hearing that Mother had serious concerns she could not afford transportation, and there was no evidence that Mother was to be solely blamed for that continuance;

c. Mother was working full time when the problems arose and was trying to meet a variety of expenses and obligations she had with limited funds for which she was receiving minimal support for from Father.

This Court entered a[n] order October 10, 2012 on [Father]'s affidavit for Rule to Show Cause and this order was entered pending the entry of the final dissolution decree. This Court found and ordered:

*"It is obvious to the Court that the [Mother] wants to control and does what she wants, when she wants to do it, even though her actions conceivably are damaging the relationship between the children and their father. Her leaving Clay County with the children only posting a note to the door of their residence may have been for a variety of legitimate reasons, but [Mother] presented no evidence other than to answer the Court's question of why she moved, stating 'I didn't want [Father] to know' and 'I wanted to move in my direction,' inferring she wanted control of the situation regardless of [Father]'s feelings or relationship with the children."*

13. One of the primary reasons the parties originally decided to move the boys to Clay County, Indiana is so that they could go to Jackson Township Elementary School with teachers and the principal known to Father, as he went to said elementary school as a child. Further, his mother had taught there, previously. Further, Clay County, Indiana is the county where ten (10) extended paternal family members reside, including the paternal grandparents; two (2) aunts; two (2) uncles; and four (4) cousins. One of [E.S.]'s cousins … was in his kindergarten class at Jackson. The Mother disputes the closeness of the children with the Father's extended family, claiming their contact is about once a month.

14. Mother testified that her mother lives in Fort Wayne as does her father and his wife; however, Mother testified that she does not have a

relationship with her father. Father testified that Clay County, Indiana provides positive male role models for the minor boys in this matter, including Father, grandfather, and two (2) uncles.

15. Another reason the parties moved to Clay County, Indiana was for purposes of daycare. Father and another witness testified daycare could be provided by the paternal grandmother or an aunt. Testimony revealed the boys are very close to their Clay County relatives. Further, testimony revealed the paternal grandmother has a master's degree in elementary school education and could be very valuable for purposes of homework should she provide daycare when necessary.

16. Due to the distance between the parties present residences, and taking into consideration the behavior of the Mother while this cause was pending and, in part because of her mental well-being, the Court finds it is not in the best interest to award joint custody.

Appellant's App. at 33-36.[2]

Mother challenges each of the findings above. However, her arguments focus on parsing particular words from each finding instead of challenging the information as taken in context. For example, in Finding 7, she disputes the trial court's use of the word "because" in stating that both she and Father wanted to move to Clay County "because both parents desired for the boys to attend Jackson Township Elementary School." *Id*. at 33. She similarly complains that Finding 13 (covering the reasons for moving to Clay County) is not supported by evidence. Both of these findings are supported by Mother's own testimony admitting that while the schools were not the only reason that the couple desired to move, it

---

[2] Notably, several of the trial court's findings of fact include the phrases, "Mother testified" or "Father testified." Appellant's App. at 33-36. Although Mother does not specifically challenge the trial court's findings on this basis, we remind the trial court that "merely reciting that a witness testified to X, Y, or Z" does not amount to finding that X, Y, or Z is a fact as contemplated by Indiana Trial Rule 52(A). *In re Adoption of T.J.F.*, 798 N.E.2d 867, 874 (Ind. Ct. App. 2003). Instead, "the trier of fact must find that what the witness testified to is the fact." *Id*.

10

was "one of the primary reasons." Tr. at 70. She likewise parses the term "joint decisions" in Finding 8. The record is replete with evidence indicating that until Mother unilaterally decided to leave home with the children, joint decisions were common practice in the marriage.

Mother continues the hairsplitting by challenging the trial court's characterization of her reason for absconding with the children as her desire "to avoid a potentially ugly confrontation in front of the children." Appellant's App. at 34 (Finding 10). The sum of the evidence supports this, as she admitted to physical altercations with Father in the past. Additionally, she challenges the trial court's characterization of the children's relationships with paternal extended family as being "close," "positive," and "valuable." *Id*. at 36 (Findings 13-15). The only challenged reference that finds no support in the record is the trial court's general reference in Finding 9 to Mother being "hospitalized." *Id*. at 33. We find this reference to be innocuous, especially when taken in context of the entire finding, which references her physical maladies and not merely her mental health issues.

In sum, Mother's arguments consist of invitations to reweigh evidence and judge witness credibility, which we may not do. The trial court's conclusion concerning the best interests of the children was based on a number of factors, including extended family support, Mother's mental and financial instability and how those factors affect her decisionmaking and conduct concerning the children, and the distance that she voluntarily placed between herself and Father. The record supports the trial court's findings, and the findings support its conclusion that awarding physical custody to Father is in the children's

11

best interests. As such, we conclude that the trial court's custody order is not clearly erroneous. Accordingly, we affirm.

Affirmed.

BARNES, J., and PYLE, J., concur.