# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**CARL PAUL LAMB**
Carl Lamb and Associates
Bloomington, Indiana

ATTORNEY FOR APPELLEE:

**KENDRA G. GJERDINGEN**
Mallor Grodner LLP
Bloomington, Indiana

**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE PATERNITY OF C.S.: M.R. (Mother), )
                                                        )
       Appellant,                               )
                                                       )
            vs.                                  )     No. 53A01-1108-JP-381
                                                        )
R.S. (Father),                           )
                                                       )
       Appellee.                             )

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Stephen R. Galvin, Judge
Cause No. 53C07-0804-JP-461

**March 19, 2012**

**OPINION – FOR PUBLICATION**

**DARDEN, Judge**

## STATEMENT OF THE CASE

M.R. ("Mother") appeals the trial court's order granting a petition for modification of custody filed by R.S. ("Father").

We affirm.

## ISSUES

I. Whether the trial court abused its discretion in finding that a substantial change in circumstances warranted modification of custody.

II. Whether the trial court's order contravened Indiana Code section 31-17-2-8.

III. Whether the trial court erred in relying on an updated custody evaluation.

## FACTS

Mother and Father were involved in a dating relationship from 2004 through 2008. During the early part of the relationship, Mother was stationed at Fort Lewis, Washington, in the Active Army Reserves, while Father was stationed in Seattle with the Navy. Mother and Father began cohabiting in February of 2005. When Father obtained a job at the Crane Naval Surface Warfare Facility in Bloomington, Indiana, Mother and Father moved to the Bloomington area, where they continued their cohabitation.

On February 13, 2006, Mother and Father's son, C.S., was born. When C.S. was six months old, Mother began attending Indiana University while on inactive status. However, in 2007, Mother re-enlisted in the Army Reserves, and when C.S. was three

years old, Mother was deployed to Iraq. Before Mother left for Iraq, Mother and Father's relationship ended.

Upon her return from Iraq to the Bloomington area, Mother continued as a student at Indiana University on inactive duty, while Father continued to work for Crane. On July 27, 2009, Mother and Father entered into an agreed entry, approved by the trial court, to share joint legal custody and equal physical custody of C.S.

After graduating from Indiana University, Mother took a position at Fort Knox, Kentucky, as an Army Reserve Career Counselor on active reserve duty. On May 17, 2010, Mother filed a notice of intent to relocate from Bloomington, Indiana, to the Fort Knox, Kentucky area. In the notice, Mother requested that C.S. be relocated with her and that the existing parenting time schedule continue until C.S. started school. Both Mother and Father acknowledged that C.S. would begin school during the fall semester of 2011. In response to Mother's notice of intent, Father requested primary physical custody of C.S.

On January 14, 2011, the trial court issued an order which essentially continued the arrangements set forth in the prior agreed entry.[1] The trial court partially based its determination on a court-ordered custody evaluation performed by Dr. Laurence Barnhill.

_____

[1] The trial court also ruled that Father would become C.S.'s primary custodian when he began school in 2011. However, after Mother filed a motion to correct error, this portion of the trial court's original order was deleted from the May 4, 2011 amended order.

On July 1, 2011, Father filed a petition to modify custody. In the petition, Father alleged that a substantial change in circumstances had occurred because C.S. was "set to begin kindergarten in August, 2011." (Mother's App. 80). Father also alleged that he did not believe "that the joint custody arrangement can continue given the distance between the parties' homes, approximately two and one-half hours." *Id.* Father requested that he be awarded primary physical custody of C.S.

On July 7, 2011, the trial court held a hearing on Father's petition. The trial court granted Father's petition and ordered that Father would exercise primary physical custody so that C.S. could begin kindergarten at the beginning of the 2011-12 school year. Pursuant to Father's request, the trial court issued findings of fact and conclusions of law in support of its order. In pertinent part, the trial court found:

7. [C.S.] is 5 ½ years old. He has been actively involved in preschool in Bloomington, Indiana, and Fort Knox, Kentucky. Both preschool programs have a significant educational component. [C.S.] has done well in both preschools.

8. Mother and Father agree that [C.S.] is ready to begin kindergarten. Mother specifically testified that [C.S.] has done very well in his preschool at Fort Knox and that he is "more than ready for kindergarten." [C.S.] is looking forward to attending kindergarten.

9. In spite of [C.S.'s] readiness to begin kindergarten, Mother now asserts the following: (1) he should not be started in kindergarten for another year and that the current custody arrangement should be maintained until [C.S.] is seven years old; or (2) he should begin kindergarten in both Kentucky and Indiana on alternating weeks and the current custody arrangement should be maintained; or (3) if custody is modified, she should have primary physical custody.

4

10. Father and Mother are both exemplary parents. [C.S.] would thrive in either of their homes.

11. Father lives in a home in Bloomington that he purchased in 2005. [C.S.] has his own room. The home has a yard with a garden. [C.S.] has friends in the neighborhood.

12. Father has many friends in and near Bloomington. Many have known [C.S.] since his birth. Some have children with whom [C.S.] is very close. Father and [C.S.] often spend time with these friends. [C.S.] is very close to, and comfortable with, Father's group of friends.

13. Father has a girlfriend, [F.B.], who also lives and works in Bloomington. [F.B.]'s parents live in nearby Greene County. [C.S.] knows [F.B.] and her parents well and enjoys spending time with them. [F.B.] has given [C.S.] horseback riding lessons and she has camped and gone on vacation with Father and [C.S.].

14. Father works Monday through Friday at Crane Naval Surface Warfare Center. Crane is located approximately 45 minutes from his home. He is required to work eight and a half hours per day and he can begin his work day between 6:00 a.m. and 9:00 a.m. His schedule is extremely flexible. Father is able to take off work when necessary to take [C.S.] to appointments or to stay home with him when he is sick. Any overtime by Father is voluntary. Father is employed by the Department of Defense. He has held the same position for six years, initially as a contract employee and as a federal employee for the past year. Father's position is stable.

15. Father and [C.S.] enjoy many outdoor activities, including camping, sailing, and gardening.

16. Father and Mother chose Bloomington as the place they wished to live long [before] [C.S.'s] birth. [C.S.] was born in Bloomington, Indiana. He has lived in Bloomington throughout his life. Since 2009, he has split time between his Father's and Mother's homes.

5

17. In May, 2010, Mother re-enlisted for another three year term with the United States Army Reserve. Shortly thereafter, she moved to Fort Knox, Kentucky.

18. Mother currently works at the Fort Knox base located approximately 25 miles outside of Louisville, Kentucky. Her current enlistment is as an Active Guard Reserve. Mother's current Military Occupational Specialty (MOS) is Army Reserve Career Counselor. This is a non-deployable position. She works Monday through Friday on the base located approximately 30 minutes from her home. She also works at least one weekend each month. The weekend is not the same each month. Mother also has other trainings out of state each year.

* * * *

21. Dr. Laurence Barnhill prepared an initial custody evaluation on August 24, 2010. He prepared an Updated Custody Evaluation, as ordered by the Court, dated June 27, 2011. Dr. Barnhill recommends that Father be granted primary physical custody of [C.S.].

(Mother's App. 84-86).

After quoting statutes governing modification of custody, the trial court concluded among other things that C.S.'s age and academic needs established a substantial change in circumstances supporting modification. The trial court also concluded that beginning kindergarten in 2011 is in C.S.'s best interests. The trial court further concluded that Mother's plan of having C.S. alternate weeks at different schools was impractical. In addition, the trial court concluded that "Mother's proposals are not based on the child's best interests. Rather, they are intended to maximize her contact with C.S., even at the

6

expense of the child's stability." (Mother's App. 91). Finally, the trial court concluded that Father should have primary custody of C.S.

## DECISION

When reviewing a custody determination, we afford the trial court considerable deference as it is the trial court that observes the parties' conduct and demeanor and hears their testimonies. *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 945-46 (Ind. Ct. App. 2006). We review custody modifications for an abuse of discretion "with a preference for granting latitude and deference to our trial judges in family law matters." *Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011) (quoting *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009)), *trans. denied*. We will not reweigh the evidence or judge the credibility of witnesses. *Kondamuri*, 852 N.E.2d at 946. Rather, we will reverse the trial court's custody determination based only upon a trial court's abuse of discretion that is "clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom." *Id*. "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (quoting *Brickley v. Brickley*, 247 Ind. 201, 210 N.E.2d 850, 852 (1965)).

When the trial court enters special findings of fact and conclusions based on those findings pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review: whether the evidence supports the findings and whether the findings support the order.

7

*Tompa v. Tompa*, 867 N.E.2d 158, 163 (Ind. Ct. App. 2007). To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *Kondamuri*, 852 N.E.2d at 944.

1.      Substantial Change

Mother contends that the trial court abused its discretion in concluding that C.S. was of a physical and mental age where readiness for kindergarten was a substantial change in circumstances that warranted modification of the custody order. Mother argues that there is no Indiana case law that "supports the proposition that the mere fact of a child being eligible to attend school, but not yet attending school, is a change so substantial as to warrant modification of custody." Mother's Br. at 24. Mother further argues that no substantial change has taken place because "school attendance in Indiana is not mandatory until age 7." Mother's Br. at 24 (citing Ind. Code § 20-33-2-8).

Under Indiana Code section 31-14-13-6, a trial court may modify a child custody order in a paternity action if (1) the modification is in the best interests of the child; and (2) there is a substantial change in one or more of the factors that the court may consider under Indiana Code section 31-14-13-2.[2] These factors include (1) the age and sex of the child; (2) the wishes of the child's parent or parents; (3) the interaction and

---

[2] Both the parties and the trial court cite Ind. Code § § 31-17-2-21 and 31-17-2-8. These statutes apply to modification of custody in dissolution actions. Custody modifications in paternity actions are governed by Article 14 of Title 31. Although the parties' and the trial court's citations to Article 17 are incorrect, the trial court's decision is unaffected as the legal standards included in Article 14 are, in pertinent part, identical to those in Article 17.

interrelationship of the child with his parent or parents and any other person who may significantly affect the child's best interests; and (4) the child's adjustment to the child's home, school, and community.

Here, the trial court found that originally it was the wish of both Mother and Father that C.S. begin kindergarten in 2011. Although Mother changed her mind as the time for modification approached, it is clear from her testimony that she recognizes that C.S. has reached the age and experience level where he is ready to make the transition from his pre-kindergarten programs to kindergarten. Indeed, she testified that "he's more than ready for kindergarten. I mean, he's excelled at all the tests he's been given . . . ." (Tr. 212). Furthermore, Mother expressed no reservation about C.S.'s emotional or developmental ability to adapt to kindergarten. Mother and Father made commendable efforts to put C.S. in pre-kindergarten programs that prepared him to enter kindergarten in 2011. Although Indiana law allows C.S. to wait another year to enter school, there is no reason for him to repeat the pre-kindergarten programs he has already mastered. In short, C.S.'s academic needs and abilities have substantially changed, and he has reached an age and developmental stage that warrants a change in physical custody. Also, as the trial court concludes, such a change is clearly in C.S.'s best interests.

2.      Indiana Code section 31-17-2-21.3

Mother contends that the trial court erred by considering factors directly related to

9

her relocation as result of her active duty military service.[3] Mother cites Indiana Code section 31-17-2-21.3 in support of her contention.

Indiana Code section 31-17-2-21.3 provides:

(a) A court may not consider a parent's absence or relocation due to active duty service as a factor in determining custody or permanently modifying a child custody order.

(b) If a court temporarily modifies a custody order due to a parent's active duty service, the order temporarily modifying the custody order terminates automatically not later than ten (10) days after the date the parent notifies the temporary custodian in writing that the parent has returned from active duty service. This subsection does not prevent a court from modifying a child custody order as provided under this article after a parent returns from active duty service.

Generally, "in construing a statute we will only interpret a statute that is ambiguous." *Comm'r of Labor v. An Island, LLC*, 948 N.E.2d 1189, 1191 (Ind. Ct. App. 2011) (quoting *In re Estate of Inlow*, 735 N.E.2d 240, 251 (Ind. Ct. App. 2000)), *trans. denied*. We may not interpret the meaning of a statute that is clear and unambiguous on its face. *Id*. A statute is ambiguous when it is susceptible to more than one interpretation. *Id*. When a statute is ambiguous, we are compelled to ascertain and execute legislative intent and to interpret the statute in such a manner as to prevent absurdity. *Id*. Further, in interpreting the statute, we will read the statute as a whole, attempting to give effect to all provisions so that no section is held meaningless if it can be reconciled with the rest of the statute. *Id*.

---

[3] "Active duty" means full-time service in the armed forces of the United States (as defined in Indiana Code section 5-9-4-3) for a period that exceeds thirty consecutive days in a calendar year. Indiana Code section 5-9-4-3 provides that "armed forces of the United States" means the "active or reserve components" of the army and other military organizations.

In concluding that this statute did not apply to Mother, the trial court stated as follows:

> IC 31-17-2-21.3 does not prohibit modification of custody. Rather, it protects a citizen-soldier from losing custody of their child based on their absence from their child's life while they are serving their country. This section is meant to serve as a shield. Mother is attempting to use it as a sword. Mother is not absent from the child's life at this time. By her own admission, she is available to act as the primary custodial parent for the child. She has a safe, stable job. She cannot be deployed. Mother is attempting to utilize the statute to exercise a veto power over any custody modification, even when the modification is in her child's best interests. Mother's interpretation would render the statute absurd.

(Mother's App. 92).

A reading of the statute in its entirety supports the trial court's conclusion. Section (a) generally prevents the trial court from making a determination of custody or permanent modification of a custody order while a parent is on active duty service. Section (b), however, contemplates impermanency of such service by referring to the return of the parent from active duty service.

Here, Mother chose to reactivate her active duty service to take a job as a career counselor because it provided better pay and benefits than the private sector. She testified that she was "very confident [she would] remain in Fort Knox for some time to come." (Tr. 204). She also testified that her location would be changed "only by [her] own request." (Tr. 141). In addition, Mother testified that her position is "non-

11

deployable," meaning that she cannot be deployed to a combat zone. Thus, her service does not demonstrate the impermanency contemplated by the statute.[4]

Even if we accept Mother's contention that the statute prevented the trial court from considering the effects of relocation, we do not conclude that the trial court committed reversible error. The trial court specifically found that Father's flexible work schedule allowed him more freedom to make adjustments necessitated by C.S.'s education or health needs. The trial court also found that Mother's job includes some weekend duties and occasional travel. The trial court further found that Father has a more extensive support system in place. These findings, standing alone, are sufficient to support modification.

3.    Updated Custody Evaluation

Mother contends that the trial court erred in considering Dr. Barnhill's updated custody evaluation. She argues that the updated evaluation was based upon three-hour telephone conversations with Father and Mother that added no value to the original evaluation.

---

[4] Father argues that the statute applies only when a parent is "deployed or transferred to a station where dependents cannot follow [or where] that parent is unable to provide care for a child in his or her custody during that time." Father's Br. at 11. Some states have explicitly stated this qualifier. *See e.g.,* Ga. Code Ann. § 19-9-3(i) (stating that no final order of modification may be entered earlier than ninety days after the end of parent's deployment, where "deployment" is defined by Ga. Code Ann. § 19-9-6(2) to mean "military service . . . for which a parent is required to report unaccompanied by family members"). We need not address this portion of Father's argument, and we leave the issue for another day.

We first note that Mother has not shown that she objected to the trial court's use of the evaluation. A party cannot raise an issue for the first time on appeal. *Carr v. Pearman*, 860 N.E.2d 863, 871 n.3 (Ind. Ct. App. 2007), *trans. denied*. Therefore, the issue is waived. *Id*.

Waiver notwithstanding, Mother cannot prevail. She is asking us to reweigh the evidence, which we cannot do. *Kondamuri*, 852 N.E.2d at 946.

CONCLUSION

The trial court did not abuse its discretion in finding that C.S.'s physical and mental/academic maturation constituted a substantial change warranting modification of custody. The trial court did not misinterpret Indiana Code section 31-17-2-8 in the process of drawing conclusions from its findings. Finally, the trial court did not err in relying on the updated custody evaluation.

Affirmed.

BAKER, J., and BAILEY, J., concur.