Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 21 2013, 8:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TERRY A. WHITE**
Olsen & White, LLP
Evansville, Indiana

ATTORNEY FOR APPELLEE:

**JERRY D. STILWELL**
Bamberger, Foreman, Oswald and Hahn, LLP
Princeton, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

STEPHANIE A. JOHNSON,          )
                               )
    Appellant-Respondent,      )
                               )
        vs.                )          No. 26A04-1304-DR-159
                               )
ERIC EDWARD POWELL,            )
                               )
    Appellee-Petitioner.       )

APPEAL FROM THE GIBSON CIRCUIT COURT
The Honorable Jeffrey F. Meade, Judge
Cause No. 26C01-0506-DR-74

**November 21, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Stephanie A. Johnson ("Mother") appeals a custody modification order awarding primary physical custody of her two minor children to their father, Eric Edward Powell ("Father"). Finding that she has failed to establish that the trial court's custody modification determination was clearly erroneous, we affirm.

**Facts and Procedural History**

Mother and Father were married in 1996 and subsequently had a son, Cl.P., born in January 1997, and a daughter, Ca.P., born in March 2001.[1] The couple divorced in March 2006. The dissolution decree provided for joint legal custody of Cl.P. and Ca.P., and Mother was awarded primary physical custody. Father was granted parenting time on alternate weekends, one weekday evening, holiday time, and six weeks each summer, pursuant to the Indiana parenting time guidelines.

In April 2012, Father filed a petition for rule to show cause why Mother should not be held in contempt for denying him his parenting time with Cl.P. and for failing to notify him concerning medical attention and treatment needed by the children. In May 2012, Mother filed a petition to modify parenting time, requesting that the trial court terminate Father's parenting time with Cl.P. based on her allegations that Father and his wife harassed and belittled Cl.P. and that Cl.P. no longer wanted to participate in visitation with Father. In July

---

[1] The record contains inconsistent information concerning Ca.P.'s birth year. We have chosen the birth year as specified in the appealed custody modification order.

2012, Father filed a petition for modification of custody, alleging that it was in the children's best interests that he be granted primary physical custody of the children.

The trial court appointed a guardian ad litem ("GAL") and held a series of hearings in October and November 2012 on the modification and contempt petitions. Among the witnesses was the GAL, who testified and submitted a report containing her recommendations. The GAL interviewed the children, other witnesses, and school personnel and observed the children with Mother and with Father in their respective homes. The GAL concluded that a change of physical custody to Father was in Ca.P.'s best interests. She also recommended that once Cl.P. and Father reestablished their relationship, Cl.P.'s best interests would also merit a change of primary physical custody to Father. In support of her recommendations, she cited her observations of the children with each parent, the children's hygiene, Cl.P.'s poor and inconsistent academic performance, text message evidence indicating that Mother allowed Cl.P. to skip school, Facebook postings by Mother and Mother's fiancé referencing graphic sexual conduct, and Mother's lack of cooperation with Father regarding parenting time and joint decisions concerning the children.

The GAL also cited an interview with Ca.P.'s church youth leader, Stephanie McCandless, who testified at the November 2012 hearing. McCandless described a conversation she had with Ca.P. earlier that year, in which the tearful Ca.P. told her about Mother's conduct with numerous boyfriends and stated that she was concerned about the amount of time that Cl.P. spent playing video games. She also told McCandless that she wanted to stay with Father and that she wanted Mother to stop lying. During the November

2012 hearing, the GAL reported that she had attempted to facilitate the reestablishment of the relationship between Father and Cl.P. by setting up a visit, which Mother canceled. Additionally, Father set up a joint counseling session for himself and Cl.P., but Mother canceled it reportedly on the advice of counsel. Mother admitted that she had not ensured that Cl.P. would attend these meetings with Father. The trial court admonished Mother and ordered specific visitation times for Father and Cl.P.

At a final hearing in February 2013, Father testified that he still had concerns about Cl.P.'s academic performance, but testified that he had enjoyed some good visits with Cl.P. since the November hearing. Following the hearing, the trial court conducted separate in-camera interviews with both Ca.P. and Cl.P. Thereafter, the trial court issued an order granting Father's petition for custody modification of both children and finding Mother in contempt. Mother now appeals the custody modification order. Additional facts will be provided as necessary.

**Discussion and Decision**

Mother contends that the trial court erred in granting Father's petition for modification of custody. When reviewing a custody modification determination, we give considerable deference to the trial court, which observes the parties' conduct and demeanor. *In re Paternity of C.S.*, 964 N.E.2d 879, 883 (Ind. Ct. App. 2012), *trans. denied*. Where, as here, the trial court issues special findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review in which we first determine whether the evidence supports the findings and then determine whether the findings support

the judgment. *Id*. Findings and conclusions will be set aside only if they are clearly

erroneous. *Id*. A judgment is clearly erroneous if it leaves us with a firm conviction that a

mistake has been made or if it applies the wrong legal standard to properly found facts.

*Kondamuri v. Kondamuri*, 852 N.E.2d 939, 944 (Ind. Ct. App. 2006). In conducting our

review, we neither reweigh evidence nor judge witness credibility. *C.S.*, 964 N.E.2d at 883.

Instead, we consider only the evidence and reasonable inferences most favorable to the

judgment. *In re Marriage of Duckworth*, 989 N.E.2d 352, 354 (Ind. Ct. App. 2013).

Custody modification determinations are governed by Indiana Code Section 31-17-

2-21, which states,

> (a) The court may not modify a child custody order unless:
> (1) the modification is in the best interests of the child; and
> (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 and, if applicable, section 8.5 of this chapter.
> (b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.
> (c) The court shall not hear evidence on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interests of the child as described by section 8 and, if applicable, section 8.5 of this chapter.

Subsection (b) requires that the trial court consider the following factors in

determining the best interests of the children in circumstances involving petitions for custody

modification:

> (1) The age and sex of the child.
> (2) The wishes of the child's parent or parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
>     (A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

Ind. Code § 31-17-2-8.

As petitioner, Father bore the burden of proving that the existing custody order is unreasonable and should be altered due to a substantial change in circumstances occurring since the date of the previous custody decree and affecting the children's welfare. *Cunningham v. Cunningham*, 787 N.E.2d 930, 935 (Ind. Ct. App. 2003). Where, as here, the trial court conducts in-camera interviews of the children, the court has discretion in conducting such interviews, i.e., whether counsel is present and whether the interview is recorded and/or made part of the record. *White v. White*, 655 N.E.2d 523, 528 (Ind. Ct. App. 1995); *see also* Ind. Code § 31-17-2-9 (stating that court may interview child in chambers to ascertain child's wishes, with or without counsel present and with or without making it part of record).

In its custody modification order, the trial court found in pertinent part as follows:[2]

10. Mother's testimony regarding Cl.P. was essentially that she believed Cl.P. did not want to go for parenting time with Father; that Cl.P. was

---

[2] The order refers to the children by their first names. We refer to them using their initials.

uncomfortable being with Father; and that she felt Cl.P. should not have to visit with Father. Mother further alleged that Father harassed or belittled the son, Cl.P. Father denied the allegations as stated by Mother, and the Court has found no evidence to support Mother's allegations.

11. At the conclusion of the November 28, 2012 hearing, this Court ordered Mother to commence parenting time for Father with the son, Cl.P.

12. Father has had parenting time with Cl.P. since December 2, 2012, as previously ordered by the Court herein.

13. The parenting time with Father and Cl.P. has gone well, and there has existed no reason why Mother was not requiring Cl.P. to have parenting time with his Father. The Court finds the Mother's allegations that Father "dogs" and belittles Cl.P. to be unfounded. To the contrary, the Court finds the Father was merely trying to establish and maintain a structured home life for his children, which included appropriate discipline and attempts at modifying, for the better, Cl.P.'s behavior.

14. The actions or inaction of Mother are such that Father's Information for Contempt should be granted. At the time of the initiation of this action, Cl.P. was doing extremely poorly in school. Had Father not intervened by filing his Petition for Modification herein, the Court is doubtful that Mother would have placed any emphasis on Cl.P. regarding his schoolwork. Cl.P. has improved, but even on the most recent school report he had a D and an F in math subjects.

15. Father places a lot of emphasis on the need for Cl.P. to have some direction at home for matters concerning his education. Mother does not seem to express or have the same interests. In fact, the evidence indicates Mother permitted Cl.P. to miss school on his birthday.

16. Ca.P. has performed well at school; however, the Court finds compelling the testimony of Stephanie McCandless regarding the concerns that Ca.P. has about her living atmosphere.

17. Prior to Court hearings, Mother had her driver's license suspended and only took care of that matter shortly before Court. Additionally, Mother had not taken the children to a doctor for several years and again shortly before Court hearing had both children to see their doctor. There was testimony by Father and his wife of head lice issues associated with Mother's home. Mother did not deny those allegations.

7

18.     Mother took Ca.P. to the dentist just shortly before the last hearing herein and testified that Ca.P. had not been to the dentist for three years.  There was testimony by Father and his wife of the concern for the oral hygiene of Ca.P.

19.     There was entered into evidence Facebook information which should not have been available for the children to have seen.  The Facebook postings were between Mother and her boyfriend … who Mother testified resides with Mother.  These postings were graphic in nature and were available to Cl.P. to observe.

20.     The GAL reported that according to Ca.P. her brother, Cl.P., often locked himself in his bedroom and played video games.  Ca.P. also mentioned to the GAL hearing sexual noises with her Mother and different, "many", "several", men in Mother's bedroom.  After the close of the evidence, the Court conducted separate in camera interviews of both children.  Ca.P. confirmed these statements she made to the GAL.  Ca.P. explained that Cl.P. spends most of his time playing video games on a large screen television in his room and that their mother allows him to stay up playing them even after Mother goes to bed.  By contrast, Ca.P. noted that her father has a structured routine and enforces it, in addition to required chores, much to her brother Cl.P.'s distress.  Ca.P. also advised that she had seen her mother's "private parts" on a cell phone and how disturbing it was to her when she saw it.  Ca.P. loves her mother, but wants to live with her father because she feels safe and happy with him.  She was also of the opinion that while she knows that Cl.P. does not want to live with Father, that it would in fact be in his best interests if he did.  She also expressed her desire for the court not to separate them.

21.     The Court finds it compelling that the significant other in Mother's life did not appear before the Court and testify.  To the contrary, Father's wife did appear before the Court and testified.  Father's wife, Dana, demonstrated an obvious interest in the children, their education, development, and well-being.  This Court has no way to make any such determination regarding Mother's current boyfriend who lives with her as he did not appear before the Court.  Certainly his Facebook comments are not indicative of a significant person in the lives of the children.

22.     Father and his wife, Dana, both gave testimony about out of home activities they have engaged in with the children.  Ca.P. confirmed this testimony and added that she gets along "very good" with Dana.  There was no such testimony regarding home activities from Mother. Father gave testimony of his new business venture involving motorcycles.  There were entered into

8

evidence photographs of both children at the business with Father during his parenting time. Father gave testimony that he is in a position to provide Ca.P., and especially Cl.P., with opportunities to learn trades and crafts through his new business. It should be pointed out that Cl.P. presently is not involved in any out of school activities.

23. The GAL recommended it is in the best interests of Ca.P. that she be placed in the custody of Father. The GAL further recommended the Father be the custodial parent of Cl.P. once their relationship was reestablished. Only because of the Court Order entered herein from the November 28, 2012 hearing, that relationship has been reestablished. In other words, but for the Court's coercive intervention at the request of the Father, there would be now no relationship between Father and son. Of concern for the Court, was the Mother's use of a speakerphone when Father would call the children. The Court also ordered this practice be stopped immediately.

24. The GAL testified as to Ca.P.'s admission that her Mother's idea of assisting with homework is to complete the homework for her. The GAL further had concern with the hygiene and medical care of Ca.P. who admitted bathing and brushing her teeth are not done often while at Mother's home, and that Mother doesn't make them. The [GAL] further expressed concern with the inappropriate behaviors going on within the home as evidenced by the postings on Facebook and matters which Ca.P. informed the Court and GAL thereof.

25. There was testimony that pursuant to a prior Court Order that Father had arranged for counseling for the children. The counseling ended after Mother intervened. Father further gave testimony he would like to continue counseling, if needed, for the children.

26. That since the custody of the children was initially determined herein, the Court finds the Father has met his burden of proving that there has been a substantial and continuing change in one or more of the statutory factors listed in Ind. Code § 31-17-2-8. The evidence demonstrates that modification is in fact in both children's best interests.

Appellant's App. at 15-20.[3]

Mother asserts that Father failed to meet his burden of demonstrating that there has been a substantial change of circumstances and that custody modification is in the children's best interests. In her appellant's brief, she lists sixteen specific challenges to the trial court's findings of fact, which we categorize as follows: (1) evidence concerning Mother's responses to the children's academic needs; (2) evidence concerning the children's health and hygiene; (3) evidence concerning Mother's home environment, specifically pertaining to her sexual conduct; and (4) evidence concerning the children's wishes.

We find that most of Mother's specific arguments concern the weight that the trial court assigned to a specific piece of evidence or the trial court's determinations regarding which witness it found to be more credible when the evidence was conflicting, i.e., whether Mother actually did Ca.P.'s homework for her or simply helped her with it, whether Mother allowed Cl.P. to skip school on his birthday,[4] the potential detriment to the children stemming from Mother's sexual activity and Facebook postings about it, the magnitude of the children's dental, medical, and hygiene concerns (length of time without dental or medical appointments and Ca.P.'s lack of teeth brushing, bathing, or bedtimes while at Mother's), and

---

[3] Some of the trial court's findings of fact state that a certain witness "testified" or "gave testimony." Appellant's App. at 33-36. Although Mother does not specifically challenge the trial court's findings on this basis, we remind the trial court that "merely reciting that a witness testified to X, Y, or Z" does not amount to finding that X, Y, or Z is a fact as contemplated by Indiana Trial Rule 52(A). *In re Adoption of T.J.F.*, 798 N.E.2d 867, 874 (Ind. Ct. App. 2003). Instead, "the trier of fact must find that what the witness testified to is the fact." *Id.* In this vein, we note that in some instances, the trial court indicated its agreement or disagreement with the stated testimony, which is tantamount to a factual finding.

[4] The record includes screen shots from Cl.P.'s cell phone containing his messages to a friend indicating that Mother condoned his skipping school on his birthday.

the wishes of the children concerning custody. With respect to the children's academics, she cites the improvement in their grades. Notwithstanding some improvement in the children's grades, the trial court was concerned specifically with Mother's responses to the children's academics, namely, doing Ca.P.'s homework for her and allowing Cl.P. to skip school on his birthday. Moreover, with respect to the children's wishes, we emphasize that the trial court conducted separate in-camera interviews with the children before reaching its conclusions concerning their best interests. While the record indicates that there have been problems between Father and Cl.P., there is also ample evidence of Cl.P.'s and Father's attempts to improve that relationship through counseling and working together on projects. On this point, we agree with Mother that there is nothing in the record to indicate that counseling was "court-ordered;" however, we read Finding 25 to focus more on Mother's efforts to thwart the Father-son joint counseling as indicative of her overall efforts to hinder Father's parenting time with Cl.P., which *was* court-ordered.

Additionally, we note that Mother's romantic relationships have changed since the date of the previous custody order and reject her assertion that the trial court had no right to draw negative inferences about her fiancé because he did not testify.[5] The trial court merely used the evidence contained in the record concerning the fiancé, namely, the nature of his (and Mother's) Facebook postings as well as Ca.P.'s report to the GAL concerning sexual activity taking place in Mother's home, and analyzed this information as it concerns the live-

---

[5] The record indicates that after her divorce from Father, Mother was married to another man, from whom she was separated for three years before obtaining a divorce. She now is engaged to a third man, who lives with her and the children in her home.

11

in fiancé, a person with whom the children had significant interaction. *See* Ind. Code § 31-17-2-8(4)(C) (stating that the court should consider the child's relationship not only with parents, but also with "any other person who may significantly affect the child's best interests"). To the extent that Mother cites the lack of any evidence that the children actually read her or her fiancé's graphic Facebook postings before they were deleted as support for a "no harm no foul" approach, the trial court focused on the availability of the postings for the children's observation. Also, Ca.P. reported to both the GAL and the trial court her dismay at other aspects of Mother's sexual behavior, including her noisy encounters in the bedroom and graphic cell phone photos.

In sum, Mother's brief is an attempt to relitigate the issue of custody modification. Her specific challenges to the findings are invitations to reweigh evidence and judge witness credibility, which we may not do. In concluding that a substantial change in circumstances had occurred since its previous custody order and that custody modification was in the best interests of the children, the trial court cited a number of factors, including Mother's refusal to abide by parenting time and notification requirements, the children's health and hygiene concerns, Mother's response to the children's academic issues, the living atmosphere at Mother's house, the fiancé's potential negative influence on the children, the in-camera interviews, and the report and recommendations of the GAL. The record supports the trial court's findings, and the findings support its conclusion that awarding physical custody to Father is in the children's best interests. As such, we conclude that the trial court's custody modification order is not clearly erroneous. Accordingly, we affirm.

Affirmed.

BARNES, J., and PYLE, J., concur.