**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 22 2014, 10:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CHRIS M. TEAGLE**
Muncie, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT G. FORBES**
Forcum & Forbes, LLP
Hartford City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MEGAN M. HATZELL, | ) | |
| | ) | |
| Appellant/Defendant, | ) | |
| | ) | |
| vs. | ) | No. 38A02-1309-DR-820 |
| | ) | |
| TYLER A. HATZELL, | ) | |
| | ) | |
| Appellee/Plaintiff. | ) | |

APPEAL FROM THE JAY SUPERIOR COURT
The Honorable Max C. Ludy, Judge
Cause No. 38D01-1101-DR-5

**May 22, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Megan M. Hatzell ("Mother") appeals a custody-modification order granting temporary custody of her three daughters to their father, Tyler A. Hatzell ("Father"). Because we find that Mother has failed to establish that the trial court's custody-modification determination was clearly erroneous, we affirm.

**Facts and Procedural History**

Mother and Father divorced in 2011. They have three daughters, Av.H., Au.H., and F.H. At the time of their divorce, the trial court granted Mother primary physical custody of the children, and the parties shared legal custody. Sharing legal custody required the parties to work together to make medical decisions for the children, something they struggled to do. In August 2012, after a number of disputes between the parties regarding medical treatment for Au.H., the trial court entered an order authorizing a psychological evaluation for Au.H. Appellant's App. p. 22. The court also expressed "concern[] as to whether joint legal custody will remain viable in this case." *Id.*

Five months later, Mother filed a petition to modify custody. Father filed his own custody-modification petition a short time later. The trial court heard evidence on the petitions in September 2013.

The majority of the evidence pertained to the parties' daughter Au.H., who was nine years old at the time. Au.H. had been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), mood disorder, and anxiety, and she was having

violent emotional outbursts at Mother's house.[1]  Mother described Au.H.'s behavior in the following way:

> When [Au.H.] is at home it's like walking on eggshells.  You never know when she is going to be upset.  When she does [get upset], she will come hit me in the back, she spit in my face, bit [me], pinched me, kicked me in the legs, screamed so loudly that her sisters have texted my mother to come down and help.

Tr. p. 14.  According to Mother, Au.H.'s outbursts happened four to five times daily without medication, but with medication, the outbursts occurred "once a week, if that." *Id.* at 15.  Mother said that she was trying "new tactics" to deal with Au.H.'s behavior, including walking away from Au.H., sending Au.H. to her room, and using a "consequences reward chart." *Id.* at 25.  However, Mother admitted that she had locked Au.H. in the garage to deal with her outbursts in the past. *Id.* at 25-26.

Au.H.'s second-grade and third-grade teachers testified that Au.H. had emotional outbursts at school as well. *Id.* at 46, 48-50.  When asked whether changes in Au.H.'s medications affected her behavior, the second-grade teacher said they did: "I believe it was around March, [Au.H.] just started complaining about her stomach hurting and [she] said that she had increased her medicine.  That's when I first started noticing the crying issues seemed to become a problem." *Id.* at 51.  Au.H.'s third-grade teacher testified that Au.H. had crying spells that occurred "almost daily." *Id.* at 54.  She said that Au.H. "seemed to come in [to school] in high spirits after staying with her dad . . . . [T]hen there [were] some days she said that she would fight with her mom and she would come in with tears." *Id.* at 55. Au.H.'s third-grade teacher also believed that changes in Au.H.'s

---

[1] Au.H.'s therapist testified that Au.H. had been diagnosed with separation anxiety and oppositional defiant disorder.  Tr. p. 37.  It is not clear from the record whether these are additional diagnoses or Mother's testimony regarding Au.H.'s diagnoses was incorrect.

medication adversely affected her behavior. *Id.* at 54. Both teachers also recalled receiving unpleasant emails from Mother when they taught Au.H. *Id.* at 47, 53.

Father testified that during his parenting time, Au.H. "pout[ed] from time to time," but she had "no explosive behavior." *Id.* at 65. He also testified that Mother made recent medical decisions—such as increasing the dosage of one of Au.H.'s medicines—without his input, in violation of the court's order that they make medical decisions together. *Id.* at 68-70. Father asked the court for primary custody of all three children, saying, "I just feel my parenting style and [] the atmosphere in the home is better for all the girls, but especially for Au.H.'s sake." *Id.* at 66.

After taking the matter under advisement, the trial court granted Father's modification petition. The trial court found that there had been a substantial change in the "interactions between the children and their parents" and "[Au.H.'s] adjustment to her home and school" that warranted modification. Appellant's App. p. 34. The trial court also found that:

> [Mother] has made certain medical decisions that appear to be in violation of the court's joint-custody order.
>
> Au.H. has crying and emotional problems in school that appear to be the result of her interactions with [Mother].
>
>        \*     \*     \*     \*     \*
>
> [Mother] has problems controlling Au.H.'s behavior at times, and is dependent upon drugs to control Au.H.
>
> [Mother] has placed (or locked) Au.H. in the garage on occasion.
>
> The Court has had some concerns, since prior hearings, [about] the medical decisions that [Mother] has been making concerning the children.

[S]chool officials testified that they had received some unpleasant e-mails from [Mother] concerning Au.H.

The e-mails in and of themselves are not terribly significant, but when tied [to] the lack of flexibility on parenting time, and the frequent medical examinations the children are being put through[,] said e-mails become part of a pattern of control on the part of [Mother].

*Id.* at 33-34. The court noted that although the majority of the evidence supporting modification pertained to Au.H., "all three children should remain together." *Id.* at 34. The court concluded that "it is in the best interests of the children that temporary custody be granted to [Father] to see if the children's mental and physical health can be stabilized."[2] The court granted Mother parenting time according to the Indiana Parenting Time Guidelines.

Mother now appeals.

### Discussion and Decision

Mother contends that the trial court erred in granting Father's petition for modification of custody. When we review a custody-modification determination, we give considerable deference to the trial court that observes the parties' conduct and demeanor. *In re Paternity of C.S.*, 964 N.E.2d 879, 883 (Ind. Ct. App. 2012), *trans. denied.* Where, as here, the trial court issues special findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings, and we then determine whether the findings support the

---

[2] The trial court provided that the "temporary change in custody may be reviewed at the conclusion of the current school semester upon request by either party." Appellant's App. p. 35. In addition, the trial court did not clearly state whether the change in primary physical custody also included legal custody. However, it appears that Father was granted temporary primary physical custody *and* legal custody, as the court ordered "[Father] [] not to make any changes in the medication or treatment of the children without guidance from each of the children's doctors," and did not mention Mother. *Id.*

judgment. *Id.* We will set aside findings and conclusions only if they are clearly erroneous. *Id.* A judgment is clearly erroneous if it leaves us with a firm conviction that a mistake has been made or if it applies the wrong legal standard to properly found facts. *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 944 (Ind. Ct. App. 2006). When reviewing the trial court's determination, we do not reweigh evidence or judge witness credibility. *C.S.*, 964 N.E.2d at 883. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *In re Marriage of Duckworth*, 989 N.E.2d 352, 354 (Ind. Ct. App. 2013).

Custody-modification determinations are governed by Indiana Code section 31-17-2-21, which states:

> (a) The court may not modify a child custody order unless:
>     (1) the modification is in the best interests of the child; and
>     (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 and, if applicable, section 8.5 of this chapter.
> (b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.
> (c) The court shall not hear evidence on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interests of the child as described by section 8 and, if applicable, section 8.5 of this chapter.

Subsection (b) requires that the trial court consider the following factors in determining the best interests of the children in custody-modification cases:

> (1) The age and sex of the child.
> (2) The wishes of the child's parent or parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
>     (A) the child's parent or parents;
>     (B) the child's sibling; and

6

> > (C) any other person who may significantly affect the child's best interests.
> > (5) The child's adjustment to the child's:
> > > (A) home;
> > > (B) school; and
> > > (C) community.
> > (6) The mental and physical health of all individuals involved.
> > (7) Evidence of a pattern of domestic or family violence by either parent.
> > (8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

Ind. Code § 31-17-2-8.

"In summary, all that is required to support modification of custody under Indiana Code section 31-17-2-21 is a finding that a change would be in the child's best interests, a consideration of the factors listed in Indiana Code section 31-17-2-8, and a finding that there has been a substantial change in one of those factors." *Nienaber v. Nienaber*, 787 N.E.2d 450, 456 (Ind. Ct. App. 2003). Although both parents are presumed to be equally entitled to custody when an initial custody determination is made, a petitioner who later seeks to modify custody bears the burden of demonstrating that the existing custody order should be changed. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002).

At the hearings on the parties' modification petitions, the trial court heard evidence that Au.H. had been struggling with violent emotional outbursts at Mother's house and at school. Au.H.'s teachers suggested that her outbursts coincided with changes in her medication and issues with Mother. Father testified that Au.H. did not have violent outbursts during his parenting time. Father also testified that Mother had been making medical decisions—such as increasing the dosage of one of Au.H.'s

7

medicines—without his input, in violation of a court order that they make medical decisions together.[3]

The trial court found that there had been a substantial change in the interactions between the children, particularly Au.H., and their parents, as well as Au.H.'s adjustment to her home and school. The record supports the trial court's findings, and the findings support its conclusion that awarding custody to Father is in the children's best interests. We therefore conclude that the trial court's custody-modification order is not clearly erroneous.

Affirmed.

NAJAM, J., and BROWN, J., concur.

---

[3] Mother argues that this evidence pertains to Au.H. only—not Av.H. or F.H. Appellant's Br. p. 11. Although the trial court acknowledged this in its order, it concluded that it was in the children's best interests to remain together. Appellant's App. p. 34. Mother does not challenge that conclusion.