## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 27 2015, 10:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

David P. Murphy
David P. Murphy & Associates, P.C.
Greenfield, Indiana

ATTORNEY FOR APPELLEE

Michael E. Boring
Boring & Boring, P.C.
New Palestine, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Sophia L. Masters,

*Appellant-Respondent,*

v.

Ryan E. Masters,

*Appellee-Petitioner.*

May 27, 2015

Court of Appeals Cause No.
30A04-1410-DR-488

Appeal from the Hancock Superior Court
Cause No. 30D01-1205-DR-1134

The Honorable Terry K. Snow, Judge

**Barnes, Judge.**

# Case Summary

Sophia Masters appeals the trial court's modification of physical custody of the couple's two children to her ex-husband, Ryan Masters. We affirm.

# Issues

Sophia raises one issue, which we restate as whether the trial court properly awarded Ryan physical custody of the couples' children. Ryan raises one issue, which we restate as whether he should be awarded appellate attorney fees.

# Facts

M.M. was born in August 2008, and Ryan and Sophia were married in October 2008. They separated in February 2009, and Ryan petitioned for dissolution in July 2009. D.M. was born in November 2009. Initially, Ryan and Sophia agreed that they would have joint legal custody, with Sophia having primary physical custody and Ryan having parenting time. Shortly thereafter, the parties agreed to modify the custody arrangement with them sharing joint legal and physical custody and equal parenting time. They also agreed to work around each other's schedules, which was an issue for Ryan, who is a firefighter. The modification agreement also provided, "In the event that Mother would be deployed and/or relocated in preparation of deployment,

[D.M.][1] would live with Father primarily until such time as Mother returns." App. p. 29. Ryan lived in New Palestine.

[4] Sophia, a member of the United States Army Reserve, did not have steady employment and applied to the Active Guard Reserve ("AGR") program with the Army. Although there were positions posted in Indianapolis, Sophia did not have the ability to select where she would be located. On April 22, 2014, Sophia was ordered to active duty as an emergency care sergeant in Winston Salem, North Carolina for a three-year period. The next day, Sophia filed a notice of intent to relocate, requesting that she have custody of the children while they were in school, with Ryan having parenting time over extended breaks, holidays, and the entire summer break. Ryan objected to the move.

[5] On May 14, 2014, a hearing was held to address Sophia's relocation. Following the hearing, the court found in part:

> 3. Under the Relocation Statute, the Court finds that the Mother's relocation to North Carolina is in good faith and for a legitimate reason.
>
> 4. On the Mother having successfully showing the legitimacy of her move, the burden shifts to the Father to show that the relocation is not in the best interest of the children.
>
> * * * * *
>
> 10. Court finds that IC 31-17-2-21.3 restricting the Court's authority to change custody due to active duty service of a parent must be read in the context of the relocation statute and that said statute clearly

---

[1] The settlement and modification agreements only specifically addressed D.M. The parties do not dispute that the custody arrangement for M.M. was the same.

anticipates relocation by the parent for active duty such as deployment not merely a change of station in the United States.

11. Court finds that the active duty move was a voluntary act on behalf of the Mother who could of [sic] restricted her application for AGR positions to the central Indiana area but chose not to do so.

*Id.* at 38-39. The trial court ordered Sophia not to remove the children from Indiana without approval and stated that, upon her relocation to North Carolina, the trial court would entertain a motion for modification of custody filed by Ryan.

[6] Sophia moved to North Carolina, and the children remained in Indiana with Ryan. On September 8, 2014, the trial court conducted a hearing on Ryan's motion to modify custody. Following the hearing, the trial court issued an order incorporating the May 14, 2014 order and the evidence taken at the earlier hearing. The trial court found in part:

> The Court acknowledges that it is generally desirable to have daughters in the care of a caring Mother as they grow up. This factor weighs heavily in the Court's decision in this case. However, the Court finds stability in home community and close ties with family and extended family are clearly in the best interest of the children and outweigh the daughter-maternal bond. The Court finds specifically that it is in the best interest of these two children, that they remain in Father's custody in Indiana.

Id. at 10-11. The trial court awarded Ryan physical custody of the children and awarded Sophia parenting time. Sophia now appeals.

# Analysis

## *I. Modification of Custody*

[7] Sophia contends that the trial court failed to properly consider Indiana Code Section 31-17-2-21.3 when it denied her request to take the children with her to North Carolina and modified custody in favor of Ryan. Here, the trial court issued findings of fact sua sponte. In such a situation, the specific factual findings control only the issues that they cover, and a general judgment standard applies to issues upon which there are no findings. *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013), *aff'd on reh'g*. "It is not necessary that each and every finding be correct, and even if one or more findings are clearly erroneous, we may affirm the judgment if it is supported by other findings or is otherwise supported by the record." *Id.* We may affirm a general judgment with sua sponte findings on any legal theory supported by the evidence. Id. In reviewing the accuracy of findings, we first consider whether the evidence supports them. *Id.* We then consider whether the findings support the judgment. *Id.* "We will disregard a finding only if it is clearly erroneous, which means the record contains no facts to support it either directly or by inference." *Id.*

[8] A judgment also is clearly erroneous if it relies on an incorrect legal standard, and we will not defer to a trial court's legal conclusions. *Id.* at 998-99. We give due regard to the trial court's ability to assess the credibility of witnesses and will not reweigh the evidence, and we must consider only the evidence most favorable to the judgment along with all reasonable inferences drawn in favor of

the judgment. *Id.* at 999. Additionally, we "'give considerable deference to the findings of the trial court in family law matters . . . .'" *Id.* (quoting *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005)). This deference is a reflection that the trial court is in the best position to judge the facts, ascertain family dynamics, and judge witness credibility. *Id.* "'But to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result.'" *Id.* (quoting *MacLafferty*, 829 N.E.2d at 941).

[9] Generally, when a parent seeks to relocate, Indiana Code Section 31-17-2.2-1 provides:

> (a) A relocating individual must file a notice of the intent to move with the clerk of the court that:
>
> > (1) issued the custody order or parenting time order; or
> >
> > (2) if subdivision (1) does not apply, has jurisdiction over the legal proceedings concerning the custody of or parenting time with a child;
>
> and send a copy of the notice to any nonrelocating individual.
>
> (b) Upon motion of a party, the court shall set the matter for a hearing to review and modify, if appropriate, a custody order, parenting time order, grandparent visitation order, or child support order. The court shall take into account the following in determining whether to modify a custody order, parenting time order, grandparent visitation order, or child support order:
>
> > (1) The distance involved in the proposed change of residence.
> >
> > (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.
> >
> > (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements,

including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

(c) The court may award reasonable attorney's fees for a motion filed under this section in accordance with IC 31-15-10.

Sophia argues that, in modifying custody, the trial court failed to properly consider Indiana Code Section 31-17-2-21.3, which provides:

(a) A court may not consider a parent's absence or relocation due to active duty service as a factor in determining custody or permanently modifying a child custody order.

(b) If a court temporarily modifies a custody order due to a parent's active duty service, the order temporarily modifying the custody order terminates automatically not later than ten (10) days after the date the parent notifies the temporary custodian in writing that the parent has returned from active duty service. This subsection does not prevent a court from modifying a child custody order as provided under this article after a parent returns from active duty service.[2]

In its May 14, 2014 order, the trial court found that this statute "must be read in the context of the relocation statute and that said statute clearly anticipates

---

[2] For purposes of this statute, "active duty" means full-time service in the armed forces of the United States or the National Guard for a period exceeding thirty consecutive days in a calendar year. Ind. Code § 31-9-2-0.8. "Armed forces of the United States" includes the active or reserve components of the Army. I.C. § 5-9-4-3(1).

relocation by the parent for active duty such as deployment not merely a change of station in the United States." App. p. 39.

[11] This finding is consistent with our opinion in *In re C.S.*, 964 N.E.2d 879 (Ind. Ct. App. 2012), *trans. denied*, in which a mother chose to reactivate her active duty service to take a job as a career counselor, apparently indefinitely, in Kentucky because it provided better pay and benefits than the private sector. We agreed with the trial court's observation in that case that Indiana Code Section 31-17-2-21.3:

> does not prohibit modification of custody. Rather, it protects a citizen-soldier from losing custody of their child based on their absence from their child's life while they are serving their country. This section is meant to serve as a shield. Mother is attempting to use it as a sword. Mother is not absent from the child's life at this time. By her own admission, she is available to act as the primary custodial parent for the child. She has a safe, stable job. She cannot be deployed. Mother is attempting to utilize the statute to exercise a veto power over any custody modification, even when the modification is in her child's best interests. Mother's interpretation would render the statute absurd.

*C.S.*, 964 N.E.2d at 885 (citation omitted). We concluded:

> A reading of the statute in its entirety supports the trial court's conclusion. Section (a) generally prevents the trial court from making a determination of custody or permanent modification of a custody order while a parent is on active duty service. Section (b), however, contemplates impermanency of such service by referring to the return of the parent from active duty service.

*Id.* We held that, because the mother testified she would remain in Kentucky for "some time to come," her location would only be changed upon her request,

and she could not be deployed to a combat zone, the mother's service did not demonstrate the impermanency contemplated by the statute. *Id.*

[12] Here we do not agree with Sophia that Indiana Code Section 31-17-2-21.3 prevented the trial court from modifying physical custody to Ryan. First, although not addressed by Sophia on appeal, on June 25, 2010, the parties agreed to a modification of their previous settlement agreement. The modification agreement specifically provided, "In the event that Mother would be deployed and/or relocated in preparation of deployment, [D.M.] would live with Father primarily until such time as Mother returns."[3] App. p. 29. It is clear the parties anticipated that Sophia's military service might require her to relinquish physical custody to Ryan. And, in fact, Sophia voluntarily applied for the AGR program under a "blanket application" knowing that she would be placed where she was needed. April 14, 2014 Tr. p. 83. Given the terms of the modification and Sophia's voluntary application to the AGR program, we cannot conclude that Indiana Code Section 31-17-2-21.3 prohibited the trial court from modifying custody.

[13] Also, we believe the evidence showed that Sophia's relocation is more temporary in nature than in *C.S.* Here, Sophia has an active duty commitment of three years, and after that she might be able to return to Indiana. She also indicated she might not renew her role in the AGR program if she does not

---

[3] In her brief, Sophia asserts that "a 'deployment' is the same as a 'change of station in the United States.'" Appellant's Br. p. 15.

have custody of the children. *See* September 8, 2014 Tr. p. 138. We believe Indiana Code Section 31-17-2-21.3(b) provides guidance upon Sophia's return to Indiana.

[14] Sophia also argues that there is no evidence to support the trial court's finding that she could have restricted her application to central Indiana but chose not to do so. Our review of the record confirms that Sophia testified she could not choose her location and that she would be ordered to go where she was needed. However, Sophia has not shown that the finding is reversible error. It is clear that the trial court's decision to modify custody was based on maintaining the children's stability. In denying Sophia's relocation request, the trial court recognized that the children have a substantial number of family members in central Indiana, including Sophia's family, and that they are well-adjusted to their routine at home, school, and community. In modifying custody, the trial court again concluded it was in the children's best interest to remain in Indiana after recognizing they have extended family in Indiana and are well-adjusted to Ryan's house, their school, and their community. Thus, the trial court's custody modification was based on its analysis of the children's best interest and not whether Sophia could have chosen her location when she applied to the AGR program. Sophia has not established that the trial court's decision to modify physical custody to Ryan following her relocation to North Carolina was clearly erroneous.

## II. Appellate Attorney Fees

Ryan requests appellate attorney fees be awarded to him pursuant to Indiana Appellate Rule 66(E), which provides for the assessment of "damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. . . ." We will only assess damages where an appellant, acting in bad faith, maintains a wholly frivolous appeal. *Bessolo v. Rosario*, 966 N.E.2d 725, 734 (Ind. Ct. App. 2012), *trans. denied*. Although Appellate Rule 66(E) permits us to award damages on appeal, we must act with extreme restraint in this regard due to the potential chilling effect on the exercise of the right to appeal. *Id.* To prevail on her claim, Ryan must show that Sophia's contentions and arguments on appeal are utterly devoid of all plausibility. *See id.*

Ryan contends that this is the second appeal taken by Sophia on this issue. Sophia did pursue an appeal of the May 2014 order, and we dismissed it because the issue was not properly certified for interlocutory appeal and accepted as such by this court. *See Masters v. Masters*, 30A01-1406-DR-238 (Ind. Ct. App. Dec. 19, 2014) (citing Ind. App. R. 14(B)(3)). Although this is Sophia's second appeal, it is the first time the issue of her relocation has been addressed on the merits. Accordingly, we are not persuaded that this is a basis for awarding appellate attorney fees. Ryan also asserts that Sophia's brief contains arguments that are not supported by citation and that her brief requests us to take judicial notice of, for example, the impact of September 11, 2001 on Hoosier military families. This simply is not a case in which Sophia, acting in

bad faith, maintained a wholly frivolous appeal. Appellate attorney fees are not warranted here.

## Conclusion

[17] Based on the terms of the couples' modification agreement and the fact that Sophia's relocation is not permanent, the trial court did not err in its modification of physical custody of the children to Ryan while Sophia is in North Carolina. Further, appellate attorney fees are not warranted under these circumstances. We affirm.

[18] Affirmed.

Riley, J., and Bailey, J., concur.