## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 30 2017, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Laura M. Longstreet
Longstreet Law, LLC
South Bend, Indiana

ATTORNEY FOR APPELLEE

Bridgette F. Greene
Elkhart, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| April Gilbert,<br>*Appellant,*<br><br>v.<br><br>Matthew Sweet,<br>*Appellee.* | October 30, 2017<br><br>Court of Appeals Case No.<br>20A03-1703-JP-627<br><br>Appeal from the Elkhart Superior<br>Court<br><br>The Honorable David C.<br>Bonfiglio, Judge<br><br>The Honorable Dean O. Burton,<br>Magistrate<br><br>Trial Court Cause No.<br>20D06-1105-JP-319 |

**Robb, Judge.**

# Case Summary and Issue

[1] Matthew Sweet ("Father") and April Gilbert ("Mother") are the parents of R.S., born in November 2009. Father's paternity was established in 2011, and in 2014, the parties were granted joint legal custody of R.S., with Mother having primary physical custody and Father exercising standard parenting time. In December 2015, Father filed a petition to modify custody, and physical custody was temporarily changed to Father pending a full evidentiary hearing. After the hearing in December 2016, the trial court found it would be in R.S.'s best interests to permanently remain in Father's custody. Mother appeals, raising several issues for our review, which we consolidate and restate as: whether the trial court abused its discretion in modifying custody from Mother to Father. Concluding the trial court did not abuse its discretion in modifying custody, we affirm.

# Facts and Procedural History

[2] R.S. was born on November 22, 2009. Father's paternity of R.S. was established in 2011, and he was ordered to pay child support. Mother retained legal and physical custody of R.S. In 2014, on Father's motion, the trial court ordered the parties to share joint legal custody, with physical custody remaining with Mother. Mother and R.S. resided with Mother's parents; all three adults were smokers and smoked in the house in R.S.'s presence. R.S. has asthma which her pediatrician called "poorly controlled" due to being exposed to "heavy amounts" of cigarette smoke in her home. Appellee's Amended

Appendix, Volume 2 at 12. Despite R.S.'s doctor attempting to counsel Mother about the connection between R.S.'s asthma and her exposure to second hand smoke, Mother "chooses not to believe" her smoking is a trigger. *Id.* R.S. began kindergarten in fall of 2015, and by the first week in December, she had twenty-seven absences and was tardy fourteen times. Many of her absences were due to her being sick.

[3] On December 17, 2015, Father filed a Motion to Modify Custody alleging there had been a substantial change in circumstances that made Mother's physical custody of R.S. no longer in the best interests of the child because of her poor health and poor school attendance while in Mother's care. The trial court held an emergency hearing on December 29, 2015, at which time the court noted R.S.'s physical well-being "is certainly at risk in mother's care." Transcript, Volume I at 10. The trial court ordered R.S. to be immediately placed in Father's care pending an evidentiary hearing. Mother was ordered to exercise her parenting time "outside of her home and no overnights." *Id.* Mother moved out of her parents' home shortly thereafter. In February of 2016, the guardian ad litem ("GAL")[1] filed a report with the court after visiting Mother's new home. The GAL found no indication anyone smoked inside the home. The GAL observed that Mother "is willing to offer [R.S.] a smoke free environment" and recommended that Mother be granted standard parenting time including overnights. Appellee's Amended App., Vol. 2 at 3. The GAL

---

[1] The GAL was also serving in the capacity of parenting time coordinator for these parties.

also recommended R.S. be allowed to visit with her maternal grandparents during Mother's parenting time for short periods of no more than one to two hours "so long as there is no smoking in the home." *Id.* The trial court adopted the GAL's recommendations.

[4] Due to various continuances requested by the parties, the evidentiary hearing on Father's motion to modify custody was not held until December 27 and 28, 2016. The GAL testified to changes in R.S. since the temporary change of custody: R.S.'s "asthma improved tremendously. [Her] school attendance improved tremendously." Tr., Vol. I at 20; *see also* Exhibits Volume I, Respondent's Exhibit A (patient notes from visits to R.S.'s pediatrician noting on December 31, 2015, R.S. had a "severe[,] persistent" cough; on January 25, 2016, that R.S.'s asthma is "improving" and the symptoms are "occasional"; and on February 24, 2016, that R.S. "has been doing better overall"). The GAL also noted that despite Mother's testimony that she had stopped smoking, and despite the GAL's recommendation and the trial court's order that R.S.'s time at her grandparents' house be limited, Mother had allowed R.S. to spend significant time in the grandparents' home, including overnights. The GAL did acknowledge that Father also smokes, but noted "a vast difference" between Mother's behavior and Father's in that he only smokes outside of the home and does not allow anyone else to smoke inside the house whether R.S. is there or not. Tr., Vol. I at 55.

[5] After the temporary change of custody, R.S. began counseling at the GAL's suggestion. The counselor communicated to the GAL that R.S.'s most

significant source of stress was the conflict between her parents, generally instigated by Mother. The GAL testified to her concern that Mother does not understand that R.S. needs to be protected from the conflict between the parties and noted that Mother "completely disregards what is best for [R.S.] and does what she wants to do." *Id.* at 67. And although the GAL had also taken issue with some of Father's actions, the "difference is [Father] is open to suggestion; [Mother] is not." *Id.* at 69. Ultimately, the GAL recommended that Father be granted permanent primary physical and legal custody of R.S. with Mother to have standard parenting time with limited visits to the grandparents' home.

Following the hearing, the magistrate took the matter under advisement and on February 21, 2017, issued extensive findings. The magistrate disagreed with Mother's position that just because she had moved out of her parents' home and stopped smoking "she has resolved the issues that gave rise to the temporary transfer of custody and that custody should be returned to her," and recommended, "based upon the examination of the factors set forth in I.C. 31-14-13-6," that R.S.'s "continuation of custody with her Father would be in her best interests." Appealed Order at 4, 6. The magistrate's recommendation was approved by the court. Mother now appeals.

# Discussion and Decision

## I. Standard of Review

We review custody modifications for an abuse of discretion "with a preference for granting latitude and deference to our trial judges in family law matters."

*Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011), *trans. denied*. This is because it is the trial court that observes the parties' conduct and demeanor and hears their testimony. *In re Paternity of C.S.*, 964 N.E.2d 879, 883 (Ind. Ct. App. 2012), *trans. denied*. We will not reweigh the evidence or judge the credibility of the witnesses. *Id.* Rather, we will reverse the trial court's custody determination only if the decision is "clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom." *Id.* "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002).

[8] The trial court made special findings and conclusions thereon pursuant to Indiana Trial Rule 52(A). In reviewing findings made pursuant to Rule 52, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009). On appeal we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. *K.I.*, 903 N.E.2d at 457. A judgment is also clearly erroneous when the trial court applies the wrong legal standard to properly found facts. *Id.*

# II. Modification of Custody[2]

Following the establishment of paternity, a trial court may modify a child custody order only upon a showing that modification is in the child's best interest and that there has been a substantial change in one or more of the factors that the court may consider under Indiana Code section 31-14-13-2. Ind. Code § 31-14-13-6. Section 31-14-13-2 provides that the court "shall consider all relevant factors," including specifically:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parents;
>>
>> (B) the child's siblings; and
>>
>> (C) any other person who may significantly affect the child's best interest.

---

[2] None of the cases cited by Mother in her brief and reply brief include pinpoint citations. *See* Ind. Appellate R. 22(A). In addition, the Table of Authorities in Mother's briefs are not prepared alphabetically. *See* A.R. 46(A)(2). These deficiencies hampered our review and we direct counsel's attention to the appellate rules for future filings in this court.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

The party seeking modification of an existing custody order bears the burden of demonstrating that the existing custody order should be altered. *Kirk*, 770 N.E.2d at 307.

[10] Mother argues the trial court erred in finding that there had been a substantial change in circumstances warranting the modification of custody and in finding that R.S.'s best interests were served by placing her in Father's care.[3]

[11] The trial court acknowledged that "[b]oth parties have engaged in behavior that is disconcerting. . . . It appears that both parties share some blamed [sic] for

---

[3] Father contends Mother's appeal should be dismissed as moot because approximately two weeks after the trial court entered the order on appeal, Father filed a motion to modify Mother's parenting time due to Mother's "caustic comments" and "disparaging statements" to R.S. about Father and about the trial court's custody decision. Appellee's Amended App., Vol. 2 at 4. The trial court scheduled an evidentiary hearing and temporarily ordered Mother's visitation to be supervised "at the highest level available" – sight and sound – to monitor Mother's "words and manner of communicating those words" to R.S. *Id.* at 5. Prior to the hearing, the parties agreed the court's temporary order on parenting time would remain in full effect and Mother's visitation would continue to be supervised until otherwise ordered by the court. *Id.* at 7. Father contends we are therefore unable to grant Mother the relief she seeks. We disagree. The parties entered into the agreement knowing the issue of custody was on appeal. In entering the agreement, Mother did not agree to dismiss her appeal and she did not agree that custody should remain with Father.

their inability to co-parent." App. of Appellant, Vol. II at 7-8. With that in mind, the trial court made explicit findings about each of the factors weighing on a modification decision:

> (1) The age and sex of the child. . . . [R.S.'s] age and sex do not appear to have a significant bearing on either parent's ability to act as custodian in this case.

> (2) The wishes of the child's parent or parents. The evidence reflects that both parents are closely bonded with [R.S.] and both love her and desire to have custody of her.

> (3) The wishes of the child . . . . Little evidence was produced as to [R.S.'s] desires; however, this Court does note an examination of the notes from [R.S.'s] counselor [indicate] a desire to return to her mom's. She also indicated that she would be sad but okay with a decision that she remain with her father.

> (4) The interaction and inter-relationship of the child [with significant persons]. This Court finds that generally [R.S.] interacts very well with both parents; however, arguments repeatedly occur in front of [her], and this Court believes that the evidence reflects that the Mother is primarily at fault in instigating, or escalating, the arguments. Again, both parties, however, must share some responsibility for a failure to co-parent. . . . [O]ther persons who appear to have a significant impact in [R.S.'s] life include [R.S.'s] maternal grandfather with whom [R.S.] appears to be closely bonded with and [Father's] current girlfriend, again, with whom [R.S.] appears to be bonded with.

> (5) The child's adjustment to [home and school]. This court finds that [R.S.'s] repeated exposure to smoking in her living environment with Mother to be a concern by this Court. . . .

[T]his Court is very concerned and finds that since the original custody Order . . . [R.S.] has missed significant amounts of school while in the Mother's primary physical care. This Court would consider such factor alone to be a substantial change in circumstances warranting modification of custody in this cause.

(6) The mental and physical health of all individuals involved. Again, this Court has grave concerns about [R.S.'s] health while in her Mother's custody. This Court finds Mother's refusal to modify her environment to eliminate [R.S.'s] exposure to smoke to be a substantial change in circumstances warranting modification and placement of [R.S.] with her Father. Evidence was presented as to the Mother's diagnosis of a bipolar disorder, however, this Court cannot find that this factor alone warrants a modification of custody. This Court does have concerns as to Mother's testimony that she recently took herself off of a prescribed medication for her mental health.

(7) Evidence of a pattern of domestic or family violence by either parent. No evidence was presented as to domestic or family violence. . . .

(8) No evidence was presented that the child was cared for by a de facto custodian.

Based upon the foregoing, this Court finds that modification of custody would be appropriate and that it would be in [R.S.'s] best interests to remain in the care and custody of her Father. This Court also finds that based upon the communication between the parties, there appears to be an inability by these parents to effectively co-parent and, based upon the guardian ad litem's recommendation and testimony, this Court finds that joint legal custody would not be appropriate. This Court finds specifically when considering the factors set forth in I.C. 31-17-2-15 that the parties in this case are simply not willing or able at this time to

> communicate effectively to cooperate in advancing [R.S.'s]
> welfare.

*Id.* at 8-11.

[12]     Mother does not argue that any of the trial court's findings are erroneous, and there is no conflicting evidence about any of the factors. "[A] change in circumstances must be judged in the context of the whole environment, and the effect on the child is what renders a change substantial or inconsequential." *Steele-Giri v. Steele*, 51 N.E.3d 119, 127 (Ind. 2016) (internal quotation and citation omitted). The evidence at trial showed that in the six months preceding Father's petition, R.S.'s constant exposure to smoke had resulted in severe asthmatic reactions, she had visited the doctor six times, had missed twenty-seven days of school, and was tardy fourteen times. This evidence implicates a change in both R.S.'s physical health and her adjustment to her home and school since the original custody order in 2014. Despite medical advice, Mother was unwilling to change her behavior or to remove R.S. from her grandparents' home. It was only after the trial court made a temporary change in custody that Mother took the admonitions seriously enough to stop smoking and move to a smoke-free environment. Mother's argument that in doing so, she "appropriately responded" to the trial court's temporary custody order and has therefore "remed[ied] the issues presented" is misleading. Brief of Appellant at 21. The circumstances leading to the temporary and ultimately permanent change in custody were not a one-time occurrence. And despite the positive steps Mother took, she still takes R.S. to her grandparents' home

frequently and does not limit her time there so as to also limit her exposure to smoke, which demonstrates Mother does not understand the true nature of the issue.

[13] As for R.S.'s best interests, evidence of a child's improving condition is a consideration in determining a child's best interest. *Wiggins v. Davis*, 737 N.E.2d 437, 442 (Ind. Ct. App. 2000). R.S.'s health and school attendance have both improved "tremendously" in Father's custody. Tr., Vol. I at 20. The trial court also noted its concern over the parties' "constant ongoing conflict" and Mother's role as the instigator rather than the protector when it comes to shielding R.S. from that conflict. App. of Appellant, Vol. II at 7.

[14] The "more stringent standard" for custody modifications has been met in this case. *Steele-Giri*, 51 N.E.3d at 124. The trial court did not abuse its discretion in finding that Father proved a substantial change in one or more of the relevant circumstances and further proved that a change of custody was in R.S.'s best interest.[4]

# Conclusion

---

[4] We note that a year passed between the "temporary" change of custody to Father and the trial court's order making the change permanent. Such a lengthy delay flies in the face of our position that "permanence and stability are considered best for the welfare and happiness of the child." *Steele-Giri*, 51 N.E.3d at 124. It is incumbent on *all* involved in a custody modification proceeding – the parties and the trial court – to see that custody matters are attended to promptly.

There was ample evidence to support the trial court's determination that a substantial change in one or more custody factors had occurred and that a modification of custody was in R.S.'s best interest. The judgment of the trial court is affirmed.

Affirmed.

Riley, J., and Pyle, J., concur.